AUTORIDAD METROPOLITANA DE AUTOBUSES, recurrente, *v.* JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, recurrida.

*Número:* O-82-250        *Resuelto:* 8 de diciembre de 1983

*Jaime Pieras, Jr.* y *Luis E. Cruz Santiago*, abogados de la recurrente; *María Susana Márquez Canals*, abogada de la recurrida; *Pedro Baigés Chapel* y *Luis M. Escribano*, abogados de la Unión de Trabajadores de la Autoridad Metropolitana de Autobuses.

El Juez Asociado Señor Rebollo López emitió la opinión del Tribunal.

La Autoridad Metropolitana de Autobuses (la A.M.A.) y la Unión de Trabajadores Unidos de dicha Autoridad (la U.T.U.A.M.A.) vienen negociando convenios colectivos desde el 1972. En el convenio que firmaron en septiembre de 1976 incluyeron, por primera vez, una cláusula que, en lo pertinente, dispone:

> Salvo que otra cosa se disponga en otras disposiciones de este Convenio, el mismo entrará en vigor a la fecha de su firma y continuará en toda su fuerza y vigor hasta el día. . . . *A su vencimiento seguirá en vigor día por día hasta tanto se negocie un nuevo convenio.* (Énfasis suplido.)

En el 1978, las partes negociaron y firmaron un nuevo convenio colectivo con fecha de expiración de 8 de mayo de 1981. Dicho convenio contenía la antes transcrita cláusula. A principios de 1981, comenzaron las conversaciones con miras a la firma de un nuevo convenio colectivo. Hubo un "tranque" en las negociaciones.

El patrono notificó a la unión mediante carta de 16 de junio de 1981 que, en vista de una serie de incidentes causados por ésta y en vista de la actitud inflexible asumida en la mesa de negociaciones por el comité negociador de la misma,[1] consideraba el convenio colectivo firmado en el 1978 como no vigente "desde el momento después que se inició la conducta antes descrita y en particular desde el inicio de labores del lunes, 15 de junio de 1981".

Es esta actuación del patrono la que tiene como desenlace la Decisión y Orden Parcial emitida por la Junta de Relaciones del Trabajo de Puerto Rico que hoy revisamos.[2] La referida junta resolvió, en síntesis, que en vista de que los términos de la antes transcrita cláusula son extremadamente claros, el convenio colectivo firmado por las partes en el 1978 continuaba vigente hasta el día en que las partes negociaran y firmaran un nuevo convenio, sin tener facultad una de las partes para unilateralmente rescindirlo antes de dicho día.[3]

---

[1] Es de rigor señalar que la Junta de Relaciones del Trabajo de Puerto Rico, mediante Decisión y Orden del 18 de febrero de 1982, determinó que la U.T.U.A.M.A. había cometido una práctica ilícita del trabajo al amparo del Art. 8(2)(a) de la Ley, por cuanto había violado el convenio colectivo vigente al observar una conducta de intervención "demorando [sic] la salida de los autobuses, no utilizando [sic] los procedimientos contractuales establecidos".

[2] La orden emitida por la junta, en lo pertinente, dispone que:

"La AMA, sus agentes, oficiales sucesores y cesionarios deberán:

"1. Cesar y desistir de violar el convenio colectivo vigente con la UTUAMA en todas sus disposiciones, a menos que con anterioridad a la firma del nuevo convenio, ambas partes acuerden rescindir la extensión del mismo.

"2. Llevar a cabo las siguientes acciones afirmativas que propenden a efectuar los propósitos de la Ley:

"a) Cumplir con todas las disposiciones del convenio colectivo vigente hasta la firma de un nuevo convenio, a menos que ambas partes acuerden rescindirlo antes, particularmente las cláusulas sobre taller cerrado; descuento de cuotas; garantía de trabajo; quejas, agravios y arbitraje; antig[ü]edad; licencia sindical; fondo educacional y recreativo; plan médico.

"b) Notificar al Presidente de la Junta, dentro de los diez (10) días siguientes a la notificación, las providencias tomadas para cumplir con lo aquí ordenado."

[3] Las partes firmaron un nuevo convenio colectivo el día 15 de julio de 1982 el cual, como dato sumamente curioso, contiene igualmente la antes transcrita cláusula. El presente recurso no resulta académico por cuanto durante el período

# I

■ Es correcto que hemos resuelto que un convenio colectivo es el contrato entre las partes, *Pérez* v. *Autoridad Fuentes Fluviales*, 87 D.P.R. 118 (1963), y que cuando los términos de una cláusula en un convenio son claros y no dejan lugar a dudas sobre la intención de los contratantes hay que atenerse al sentido literal de dichas cláusulas. *Luce & Co.* v. *Junta Relaciones del Trabajo*, 82 D.P.R. 97 (1961).

Es un hecho incontrovertido, sin embargo, que los convenios colectivos irrazonablemente largos nunca han sido favorecidos en este campo. Al respecto, al considerar el tema del convenio colectivo como impedimento de nuevas elecciones, hemos expresado que "ni la Junta Nacional de Relaciones del Trabajo ni la Junta de Relaciones del Trabajo de Puerto Rico protegen la vigencia de convenios de duración irrazonablemente largos". *Beaunit of Puerto Rico* v. *J.R.T.*, 93 D.P.R. 509, 520 (1966).

■ Además, al tratar el tema de las cláusulas de renovación automática en los convenios, en *J.R.T.* v. *A.F.F.*, 108 D.P.R. 818, 824–825 (1979), expresamos que dichas cláusulas "han sido consideradas en el ámbito federal como que establecen prórrogas de duración indefinida. [Citas.] Se ha resuelto que tales cláusulas no impiden que el convenio sea terminado por voluntad de cualquiera de las partes." (Escolios omitidos.)

■ Es por ello que consideramos que la posición que ha asumido la Junta de Relaciones del Trabajo de Puerto Rico en el presente caso no es, en términos generales, saludable y correcta ya que la misma puede resultar, en primer lugar, en la situación indeseable de que unas partes queden atadas *ad infinitum* a un convenio colectivo en caso de que el *impasse* surgido en las negociaciones no pueda ser superado.

---

de tiempo comprendido entre el 15 de junio de 1981 y el 15 de julio de 1982 el patrono no descontó las cuotas de la unión del sueldo de los trabajadores (*check-off*); no se condujo el procedimiento de quejas y agravios en la forma pactada en el convenio; y la A.M.A. hizo caso omiso de la orden emitida por la junta.

Además, la posición así asumida por la referida junta, socava un principio fundamental en materia de negociación colectiva, cual es el de la negociación colectiva libre. Ello es así, por cuanto niega a las partes la utilización de los mecanismos de presión que éstas usualmente ejercen con el propósito de hacer valer sus demandas, a saber: la huelga económica por parte de la unión y cerrar operaciones, por parte del patrono.[4]

Dichos principios, obviamente, fueron la razón de ser de la vigente legislación federal relativa a este punto.[5] En Puerto Rico, nuestra Asamblea Legislativa todavía no ha legislado al respecto. La instamos a que considere aprobar

---

[4] Como hecho curioso, ésta fue precisamente la posición asumida por la propia Junta de Relaciones del Trabajo de Puerto Rico en un caso anteriormente dilucidado ante la junta entre las mismas partes: CA-5281, D-701 (1975).

[5] La Sec. 158 del Título 29 del U.S.C. dispone, en lo pertinente, que:

"(d) For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession: *Provided, That where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—*

"(1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;

"(2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications;

"(3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred; provided no agreement has been reached by that time; and

"(4) continues in full force and effect, without resorting to strike or lockout, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later . . .". (Énfasis suplido.)

legislación similar a la federal respecto a este punto específico.

No nos cabe la menor duda de que legislación como la citada resultaría sumamente beneficiosa por cuanto en una serie de situaciones aplicables permite la prórroga de un convenio colectivo por un período de tiempo razonable evitando de esta forma que las partes queden sin la protección del mismo; fomenta el que las partes negocien de buena fe, ya que de antemano están apercibidos que de surgir un tranque en las negociaciones cualquiera de ellos podría dar por terminado el convenio colectivo vigente al finalizar el término provisto en la ley; una vez hecha la notificación a esos efectos, obliga a las partes a negociar intensamente durante ese término, ya que saben que de no llegar a un acuerdo se dará por terminado el convenio; lo que de así suceder, les permitirá a las partes la utilización de los mecanismos de presión tradicionales. En fin, dicho procedimiento promueve y fomenta la negociación colectiva libre.(6)

## II

Según surge de la relación de hechos que hiciéramos al comienzo de la presente ponencia, en el caso de autos no hay duda de que había surgido un serio *impasse* entre las partes, causado el mismo, principalmente, por la conducta y actitud asumida por la U.T.U.A.M.A. durante las negociaciones. Así surge de la Decisión y Orden del 18 de febrero de 1982 emitida por la junta. Véase, escolio núm. 1, *ante.*

■ Ante esa situación la A.M.A. entiende que tenía

---

(6) Como expresara la Corte de Distrito Federal para el Distrito de California en *Local 350* v. *Slayden,* 91 L.R.R.M. 2272, 2273 (1975):

"Giving of notice 60 days prior to the termination date, *as the Union did here,* is notice that the termination date of the contract will take effect at the conclusion of the 60-day period. The two month period gives both sides, faced with a collective bargaining agreement which is *in extremis,* a sufficient period during which to hammer out a new agreement and thus avoid the economic catastrophe of a strike."

derecho a dar por terminado el convenio colectivo a la luz de los postulados generales que emanan de la citada Sec. 158 de la ley federal, por cuanto sostiene que, en ausencia de legislación local al efecto, la Junta de Relaciones del Trabajo de Puerto Rico debió "adoptar", como lo hizo su oficial examinador, los mencionados postulados. Es innecesario, sin embargo, que resolvamos el punto.

Ello es así, por cuanto la actuación de la A.M.A., aun bajo la legislación federal, es constitutiva de violación del convenio colectivo. Recordemos que la A.M.A. notificó a la unión que estaba dando por terminado el contrato, no en un término futuro razonable, sino retroactivamente. Bajo esos hechos, no hay otra alternativa que *confirmar la Decisión y Orden Parcial que emitiera la Junta de Relaciones del Trabajo de Puerto Rico en el presente caso.*

El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Negrón García concurren en el resultado sin opinión y el Juez Asociado Señor Díaz Cruz no interviene.