JUNTA DE RELACIONES DEL TRABAJO, peticionaria, *v.* VIGILANTES, INC., demandado.

*Número:* CE-87-807      *Resuelto:* 6 de marzo de 1990

*Luis B. Osorio Díaz,* abogado de la peticionaria; *Enrique Bray,* de *Domínguez & Totti,* abogado del demandado.

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del Tribunal.

Las disposiciones de un convenio colectivo no pueden violar la política pública salarial en cuanto al pago de

licencia por enfermedad acumulada y no utilizada por el empleado según fijado por la Junta de Salario Mínimo en los decretos mandatorios. Confirmamos el laudo de arbitraje que da margen a este recurso.

I

La Hermandad de Guardias de Seguridad de Vieques (Hermandad) sometió al Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos (Negociado) una querella para someterla a arbitraje. Alegó que su patrono, Vigilantes, Inc. (Vigilantes) no le había pagado a sus miembros los beneficios siguientes: días feriados, licencia por enfermedad acumulada y no utilizada, retroactividad salarial y aportación a procedimientos de solicitud de licencia de portar armas para el período comprendido entre 1983 y 30 de septiembre de 1986.

El Negociado nombró un árbitro para que resolviera conforme al siguiente acuerdo de sumisión entre las partes:

Determinar si la Compañía ha cumplido con las disposiciones del convenio colectivo y las leyes aplicables al pagar a los empleados los beneficios siguientes:
a) retroactividad salarial
b) licencia por enfermedad acumulada y no utilizada
c) días feriados
d) aportación a procedimientos de solicitud de licencia de portar armas
De determinarse que la Compañía no ha cumplido, que el Arbitro provea el remedio o remedios que procedan de acuerdo al Convenio Colectivo y las leyes laborales. (Escolio omitido.) Petición de 9 de diciembre de 1987, pág. 2.

Durante el período comprendido en la reclamación (1983–1986) estuvieron vigentes dos (2) convenios colectivos que regulaban las relaciones laborales entre las partes. Ambos disponían un procedimiento de arbitraje de querellas y limitaban las decisiones del arbitraje para que se conformaran a

derecho. El primer convenio entró en vigor el 1ro de junio de 1981 y expiró el 1ro de octubre de 1985, fecha en que entró en vigor el segundo convenio. Este último expiró el 30 de septiembre de 1988.

El 13 de noviembre de 1987, luego de celebrar la vista, la árbitro emitió su laudo. En éste determinó que el patrono había cumplido con todas las disposiciones del convenio excepto la relativa al pago de licencia por enfermedad acumulada y no utilizada por los empleados. Luego de analizar las disposiciones de los convenios colectivos aplicables en cuanto al pago de dicha licencia y el decreto mandatorio aplicable a la industria de Servicios de Vigilancia y Protección (Decreto Mandatorio Núm. 74), determinó que procedía el pago de la licencia en dos (2) formas:

Primero: El pago de aquella parte de la reclamación que cubre el período desde 1983 al 30 de septiembre de 1985 (período cubierto por el primer convenio colectivo) sería liquidado conforme a lo dispuesto en el Decreto Mandatorio Núm. 74. Esto se debía, según la árbitro, a que dicho convenio no contenía una cláusula similar a la del segundo convenio para el pago de la referida licencia.

Segundo: El pago de aquella parte de la reclamación que comprende el período desde 1ro de octubre de 1985 al 30 de septiembre de 1986 se liquidaría conforme a lo dispuesto en el Art. XI del segundo convenio colectivo.

El laudo de la árbitro dispuso, además, el pago de una cantidad igual a la dejada de satisfacer por concepto de licencia por enfermedad acumulada, según lo requiere la Sec. 27 de la Ley Núm. 96 de 26 de junio de 1956, según enmendada, Ley de Salario Mínimo de Puerto Rico, 29 L.P.R.A. sec. 246b(a).

El 24 de junio de 1987 la Hermandad acudió a la Junta de Relaciones del Trabajo (Junta) para que le ayudara a poner en vigor el laudo emitido por la árbitro en lo referente a la reclamación de licencia por enfermedad. El patrono alegó

que había pagado el dinero adeudado a los empleados en tal concepto. La Junta, luego de una investigación de las nóminas del patrono, determinó que el patrono no había demostrado que con posterioridad a la fecha de emisión del laudo se hubiera efectuado el pago en cumplimiento del mismo. En consecuencia, acudió ante nos para que hiciéramos cumplir el laudo. En su comparecencia, la Junta sostiene que el "[l]audo objeto de esta Petición es válido toda vez que no adolece de ninguna de las causas de nulidad . . .". Petición de 9 de diciembre de 1987, pág. 3.

Oportunamente emitimos resolución que ordenó a Vigilantes a mostrar causa por la cual no debíamos poner en vigor el laudo.

El patrono ha comparecido para oponerse a que se ponga en vigor el laudo. Solicita que ordenemos a la Junta realizar un estudio con miras a determinar la licencia por enfermedad que alega haber liquidado entre 1983 y 30 de septiembre de 1985, y determinar, además, si existe licencia por enfermedad aún por liquidar correspondiente a ese período. En cuanto a la licencia por enfermedad para el período entre 1ro de octurbre de 1985 y 30 de septiembre de 1986, solicita que no pongamos en vigor esa parte del laudo por ser contraria a la política pública salarial que, en cuanto a licencia por enfermedad acumulada, quedó plasmada en el decreto mandatorio que cubre su industria. Decreto Mandatorio Núm. 74.

La Junta sostiene que el patrono no ha demostrado que ha pagado la reclamación comprendida entre 1983 y 30 de septiembre de 1985. Tras adoptar la decisión del árbitro alega, además, que la voluntad de las partes —plasmada en el convenio— debe prevalecer en cuanto al pago del equivalente en dinero de *toda* la licencia por enfermedad acumulada y no utilizada por el empleado. Además, sostiene que procede la concesión de la doble penalidad más los intereses desde que se emitió el laudo. Resolvemos.

## II

La reclamación para el pago de licencia por enfermedad acumulada y no usada por el empleado para el período entre 1983 y 30 de septiembre de 1985 estaba regulada por lo dispuesto en el Art. XI del convenio colectivo vigente entre las partes desde 1ro de junio de 1981 hasta 31 de marzo de 1984. Disponía el referido artículo, en lo pertinente:

D. En lo referente a licencia por enfermedad los empleados cubiertos por este Convenio disfrutarán de los derechos y responsabilidades aquí señalados *y los del Decreto Mandatorio* vigente y aplicable a la Junta de Salario Mínimo del Departamento del Trabajo de Puerto Rico y nunca podrán recibir *menos derechos que los que en dicho decreto se provean* al presente o al futuro. (Énfasis suplido.) *Exhibit* I, Art. XI D, pág. 18.

El decreto mandatorio vigente y aplicable en este caso es el Núm. 74, el cual dispone, en lo pertinente:

*La licencia por enfermedad no usada por el empleado durante el curso del año quedará acumulada para los años sucesivos* hasta un máximo de veinticuatro (24) días a los que acumulen un (1) día laborable y doce (12) días a los que acumulen medio (½) día laborable. Si los días de licencia por enfermedad acumulados excedieren de once (11) días a los que acumulan hasta un máximo de 24 días y de cinco (5) días a los que acumulan hasta un máximo de doce (12) días, a la fecha en que el empleado empezare a disfrutar sus vacaciones regulares el patrono vendrá obligado a pagarle en efectivo el exceso de once (11) días a los primeros y de cinco (5) a los segundos a razón de ocho (8) horas diarias y a base del tipo por hora regular que esté recibiendo el empleado a la fecha. (Énfasis suplido.) *Exhibit* IV, Art. IV, pág. 66.

El patrono alega haber pagado, conforme al decreto, la licencia por enfermedad correspondiente a este período de 1983 a 1985 y que así lo pudo comprobar la Junta cuando examinó sus nóminas para esos años. La Junta, por el contrario, sostiene que el patrono no presentó evidencia ni ante

la árbitro ni ante la Junta de que con posterioridad a la emisión del laudo pagó la licencia por enfermedad correspondiente a este período.

■ Del récord no surge evidencia de tal pago. La árbitro concluyó al emitir su laudo que los pagos aún se debían; el patrono no presentó ante la Junta, ni posteriormente ante el Tribunal Superior en la acción de impugnación del laudo, la referida evidencia. El patrono nos hace una invitación a que examinemos las nóminas. Éste debió presentar tal evidencia ante la árbitro para que formara parte del récord. *Matos v. P.R. Ry., Lt. & P. Co.*, 58 D.P.R. 160 (1941).

Por ello procede que confirmemos aquella parte del laudo que ordena el pago de la licencia por enfermedad acumulada y no usada por el empleado, conforme al Decreto Mandatorio Núm. 74, para el período comprendido entre 1983 y 30 de septiembre de 1985.

### III

El pago de licencia por enfermedad acumulada y no utilizada por los empleados de Vigilantes, para el período entre 1ro de octubre de 1985 y 30 de septiembre de 1988, estaba regulado por el segundo convenio colectivo.

Dicho convenio entró en vigor el 1ro de octubre de 1985. Este nuevo convenio dispuso en su Art. XI que:

*Licencia por enfermedad y bono de productividad*
A. Cada empleado cubierto por este Convenio Colectivo tendrá derecho a licencia por enfermedad con sueldo completo a razón de 1½ día laborable por cada mes en que haya trabajado por lo menos 120 horas y a razón de 13/24 día laborable por cada mes en que haya trabajado menos de ciento veinte (120) pero no menos de 60 horas en cualquier mes.
B. La licencia por enfermedad no usada por el empleado durante el curso del año quedará acumulada para los años sucesivos hasta un máximo de veinticuatro (24) días a los que acumulen 1½ día laborable y doce (12) días a los que acumulen 13/24 día laborable.

C. Salvo en caso de fuerza mayor[,] el empleado o un representante de ést[e d]eberá notificar a su patrono el hecho de su enfermedad el mismo día de su ausencia con cinco (5) horas de anticipación al comienzo de su turno.

D. En lo referente a licencia por enfermedad los empleados cubiertos por este Convenio disfrutarán de los derechos y responsabilidades aquí señalados y los del Decreto Mandatorio vigente y aplicable en la Junta de Salario Mínimo del Departamento del Trabajo de Puerto Rico y nunca podrán recibir menos derechos que los que en dicho decreto se provean al presente o al futuro.

E. La licencia por enfermedad no interrumpirá la antig[ü]edad del empleado.

F. El patrono le pagará al empleado durante el mes aniversario de cada empleado *el equivalente de dinero de toda la licencia por enfermedad acumulada y no utilizada por el empleado durante el año en curso.* (Énfasis suplido.) *Exhibit* II, Art. XI, pág. 45.

A la industria de Servicios de Vigilancia y Protección, a la que se dedica Vigilantes y a quien no le aplica la Ley Federal de Normas Razonables del Trabajo de 1938 (29 U.S.C. sec. 201–219), le aplica el Decreto Mandatorio Núm. 74, cuya cuarta revisión *entró en vigor el 23 de febrero de 1983.* Este decreto obliga al patrono a liquidarle al empleado, en concepto de licencia por enfermedad acumulada y no utilizada, *sólo el exceso de once (11) días* (a aquellos empleados que acumulan un máximo de veinticuatro (24) días) o de cinco (5) días (en caso de empleados que acumulen un máximo de doce (12) días) a la fecha en que el empleado empieza a disfrutar sus vacaciones regulares. Art. IV del Decreto Mandatorio Núm. 74. Los once (11) o cinco (5) días, en cada caso, *los acumula el empleado como reserva para el próximo año y, por lo dispuesto en el decreto, son iliquidables en dinero.*

La médula de la controversia ante nos gira en torno a la interpretación que debe darse al convenio a la luz de lo dispuesto por el Decreto Mandatorio Núm. 74. Ante tal controversia, la árbitro consideró que debía prevalecer la voluntad

de las partes según dispuesta en el convenio colectivo. La Junta sostuvo igual posición.

El patrono sostiene que la forma de pago dispuesta en el Art. XI F del convenio colectivo es nula por contravenir la política pública sobre la forma de pago de la licencia por enfermedad dispuesta en el Decreto Mandatorio Núm. 74. No le asiste la razón. Veamos.

■ En virtud de las disposiciones de la Ley de Salario Mínimo de Puerto Rico, Ley Núm. 96, *supra*, la Asamblea Legislativa delegó en la Junta de Salario Mínimo la facultad de implantar la política pública salarial del Estado Libre Asociado de Puerto Rico sobre salarios mínimos, vacaciones y licencias por enfermedad de todas las industrias no incluidas en la Ley Federal de Normas Razonables del Trabajo de 1938 (29 L.P.R.A. sec. 245). Para fijar esas *condiciones mínimas* de trabajo, la Junta de Salario Mínimo aprueba decretos mandatorios y determina a qué industria, actividad o negocio aplican los mismos. 29 L.P.R.A. sec. 246j; *cf.* Ley Núm. 8 de 5 de abril de 1941, según enmendada, 29 L.P.R.A. ants. secs. 211–241.

■ Aprobado un decreto mandatorio conforme al trámite dispuesto en ley, 29 L.P.R.A. sec. 245 *et seq.*, éste se convierte en un documento cuasi legislativo con fuerza de ley. *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, 122 D.P.R. 318 (1988); *Srio. del Trabajo, etc. v. P.R. Cereal Extracts, Inc.*, 83 D.P.R. 267 (1961). El mismo cristaliza la política del Estado sobre las condiciones *mínimas* en la industria regulada. *Cf. Beauchamp v. Dorado Beach Hotel*, 98 D.P.R. 633 (1970). Ello no es obstáculo ni menoscaba la oportunidad del empleado de obtener *mejores* condiciones mediante la contratación individual o colectiva. Véase V.M. Caparrós González, *Alcances de la Ley de Salario Mínimo de Puerto Rico*, X (Núms. 38–39) Rev. Trabajo 42 (1982).

Esta es la situación en el caso de autos. De una lectura del referido Art. XI del convenio colectivo se desprende que las partes pactaron la aplicabilidad del Decreto Mandatorio Núm. 74 y, además, *establecieron que el patrono pagaría un bono de productividad montante al equivalente en dinero de toda la licencia por enfermedad acumulada y no utilizada por el empleado durante el año en curso.* Tal bono serviría como incentivo para que el empleado no utilizara la licencia.

Además, el convenio establece una reserva iliquidable de veinticuatro (24) y doce (12) días de licencia por enfermedad.

*Esta interpretación integral del Art. XI del convenio colectivo es razonable y hace efectivo lo estipulado por las partes.* C.M. Updegraff, *Arbitration of Labor Disputes*, Washington D.C., BNA Incorporated, 1961, págs. 225–226.

■ El lenguaje de la cláusula claramente sostiene tal interpretación. Cuando las cláusulas del convenio son claras y no dejan lugar a dudas sobre la intención de las partes hay que atenerse al sentido literal de las mismas. *A.M.A. v. J.R.T.*, 114 D.P.R. 844 (1983). No erró, pues, la árbitro al disponer en su laudo que debía prevalecer la voluntad de las partes según dispuesta en el convenio. Esa voluntad consiste en pagar las vacaciones acumuladas conforme al Art. XI del convenio colectivo y al Decreto Mandatorio Núm. 74. Aquellos empleados que no hubiesen utilizado la licencia acumulada durante el año serían acreedores al bono de productividad allí dispuesto.

El patrono confunde la forma de pago del bono de productividad, Art. XI F del convenio colectivo, con la forma de pago de las vacaciones, Art. XI A, B y C.

Si las partes hubieran pactado que el pago de la licencia por enfermedad fuera la liquidación en efectivo de *toda* la licencia, sin duda, al finalizar el año, estarían pactando en contra de la política pública fijada en los decretos mandatorios.

■ Al tener un decreto mandatorio con fuerza de ley, cualquier cláusula contractual sobre salario mínimo, vacaciones o licencia por enfermedad, en contravención a las *condiciones mínimas* sobre esas materias —según fijadas por el decreto para la industria regulada— es ineficaz y nula. *Cf. Encarnación v. Jordán*, 78 D.P.R. 505, 513 (1955); *Melgar v. P.R. Auto Corporation*, 76 D.P.R. 431, 434 (1954); *Caguas Bus Line v. Sierra, Comisionado*, 73 D.P.R. 743, 747 (1952); *Sierra, Comisionado v. San Miguel*, 70 D.P.R. 604, 607 (1949); *Acosta v. Floor Coverings Co.*, 78 D.P.R. 490, 495 (1955).

■ Ello es así toda vez que un decreto mandatorio, vigente al momento en que se negoció un convenio en la industria aplicable, representa la expresión de política pública laboral en cuanto a las condiciones mínimas de trabajo allí dispuestas y se considera incorporado al contrato de trabajo. *Cf. Encarnación v. Jordán*, supra; *Beauchamp v. Dorado Beach Hotel*, supra; *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, supra.

■ Los convenios colectivos representan la ley entre las partes siempre y cuando sus disposiciones no estén reñidas con la ley, la moral y el orden público. *Pérez v. Autoridad Fuentes Fluviales*, 87 D.P.R. 118 (1963). Cualquier disposición contractual en contravención a la ley, la moral y el orden público carece de eficacia. *Nazario v. Tribunal Superior*, 98 D.P.R. 846, 853 (1970); *Beauchamp v. Dorado Beach Hotel*, supra; *Pagán v. Fund. Hosp. Dr. Pila*, 114 D.P.R. 224 (1983). Del mismo modo, un laudo de arbitraje fundamentado en un convenio con tales defectos no es válido en la parte en que conflija con ello.

■ Ordinariamente los laudos de arbitraje en el campo laboral merecen de los tribunales una gran deferencia, salvo cuando se demuestra la existencia de fraude, con-

ducta impropia del árbitro, falta de debido proceso de ley a las partes, falta de jurisdicción del árbitro, omisión de resolver todas las cuestiones en disputa *o violación a la política pública*.[1] *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, supra; *J.R.T. v. Corp. Crédito Agrícola*, 124 D.P.R. 846 (1989). Además, las decisiones del árbitro contrarias a las leyes y "normas interpretativas de derecho sustantivo emitidas por los Tribunales Supremos de Estados Unidos y Puerto Rico en el campo de derecho laboral" invalidan jurídicamente el laudo cuando las partes han acordado que el laudo se conforme a derecho. *J.R.T. v. Hato Rey Psychiatric Hosp.*, 119 D.P.R. 62, 68 (1987).

Un convenio colectivo puede conceder más beneficios que un decreto mandatorio. Sin embargo, no puede privar a un obrero de los beneficios que le concede dicho decreto porque las partes estarían pactando en contra de la política pública fijada por el mismo. Una disposición así pactada sería nula.[2]

El Art. IV del Decreto Mandatorio Núm. 74 contiene una reserva iliquidable de once (11) y cinco (5) días de licencia por enfermedad del empleado. La política pública que se persigue es la de evitar la posibilidad de que un obrero se encuentre en la situación de no tener licencia por

---

[1] Las fuentes de la política pública son la Constitución, las leyes (que incluyen los decretos mandatorios) y los precedentes legales en el ámbito del derecho laboral. *Cf. Hurd v. Hodge*, 334 U.S. 24 (1948).

[2] *Cf.*, por analogía, con *Doctors Hospital, Inc. v. Silva Recio*, 558 F.2d 619 (1er Cir. 1977), *Chabrán v. Bull Insular Line*, 69 D.P.R. 269, 284–296 (1948), sobre la regla de mayor beneficio entre la Ley de Salario Mínimo local y la Ley Federal de Normas Razonables del Trabajo de 1938. Si las disposiciones del convenio conceden más beneficios al obrero que el mínimo requerido por el Decreto Mandatorio Núm. 74, prevalecerán las disposiciones contractuales más favorables. Esta norma no aplica a los permisos especiales otorgados por el Secretario del Trabajo a tenor con la Ley de Salario Mínimo de Puerto Rico (29 L.P.R.A. secs. 245u y v).

enfermedad acumulada cuando necesite acogerse a la misma por razones de salud, así como la de evitar el ausentismo injustificado. Como expresamos en *J.R.T. v. Junta Adm. Muelle Mun. de Ponce,* supra, págs. 332–333:

> En su esencia, la licencia por enfermedad con sueldo es algo más que un beneficio marginal común y corriente de un empleado. Es una necesidad fundamental para el trabajador puertorriqueño que surge de una necesidad involuntaria no imputable al trabajador. Cuando esta licencia se hace acumulativa, tanto el patrono como el empleado derivan beneficios de la misma, pues con ella *se disuade el ausentismo y se le provee al trabajador la oportunidad de acumular la licencia para cuando la necesite por razones de enfermedad.* (Énfasis suplido.)

La reserva dispuesta en el decreto adelanta dicha política laboral.

El convenio colectivo contiene una reserva iliquidable de veinticuatro (24) y doce (12) días de licencia por enfermedad de cada empleado. Esa reserva adelanta, de forma más beneficiosa para el empleado, dicha política pública laboral.

Pero, además, *el bono de productividad* dispuesto en el Art. XI F del convenio colectivo evita el ausentismo injustificado. Por el contrario, dicho bono fomenta la asistencia continua del empleado a su lugar de trabajo de manera más efectiva y beneficiosa que la reserva; aunque no la sacrifica en perjuicio del empleado.

Por todo lo anterior, en el caso de autos las disposiciones del convenio son más beneficiosas para el obrero que las disposiciones de política pública contenidas en el Decreto Mandatorio Núm. 74. El laudo emitido por la árbitro armoniza con las exigencias de la ley. Por ello concluimos que el mismo se conforma a derecho, según las partes se lo exigieron. Véanse: J. Young, *The Authority and Obligation of a Labor Arbitraror to Modify or Eliminate a Provision of a Collective Bargaining Agreement because in His Opinion it Vio-*

*lates Federal Law,* 32 Ohio St. L.J. 395–409 (1971); A. Cox, *The Place of Law in Labor Arbitration,* en *The Profession of Labor Arbitration: Selected Papers from the First Seven Annual Meetings of the National Academy of Arbitrators, 1948–1954,* Washington D.C., BNA Incorporated, 1957, págs. 76–89; R. Mittenthal, *The Role of Law in Arbitration,* en *Developments in America and Foreign Arbitration: Proceedings of the Twenty-First Annual Meeting, National Academy of Arbitrators,* Washington D.C., BNA Incorporated, 1968, págs. 42–75; *J.R.T. v. National Packing Co.,* 112 D.P.R. 162 (1982).

Concluimos, pues, que la liquidación de las cantidades adeudadas a estos obreros para el período entre 1ro de octubre de 1985 y 30 de septiembre de 1986 debe realizarse a tenor con las disposiciones del Art. XI del convenio colectivo.

Aquí existe una política pública importante en pro de la reserva de licencia por enfermedad, y tanto el Decreto Mandatorio Núm. 74 como el convenio colectivo promueven racionalmente esa política pública.[8]

### IV

Réstanos pasar juicio sobre la procedencia de la *penalidad* impuesta por la árbitro al patrono por lo dejado de satisfacer en concepto de licencia por enfermedad acumulada.

Procede la concesión de la misma sobre lo dejado de satisfacer por el patrono según lo aquí resuelto.

Al enmendarse la Sec. 30(a) de la Ley de Salario Mínimo de Puerto Rico en 1979, 29 L.P.R.A. sec. 246b(a), se incluyó lo adeudado por concepto de licencia por enfermedad

---

[8] Los hechos de este caso, la política pública aquí discutida y el decreto mandatorio aplicable hacen de este caso uno distinto al de *Unión de Tronquistas L. 901 v. Falgship Corp.,* 554 F.2d 8 (1er Cir. 1977).

como una de las partidas por las cuales el obrero tiene derecho a recibir una compensación adicional. Véase la Ley Núm. 114 de 17 de julio de 1979, Leyes de Puerto Rico, pág. 281.

■ De esa manera la Asamblea Legislativa reafirmó lo que, a tenor con la Sec. 30(a) de la Ley de Salario Mínimo de Puerto Rico, *supra*, anterior a la enmienda habíamos resuelto en *J.R.T. v. Ventanas Yagüez, Inc.*, 103 D.P.R. 933, 935 (1975), en el sentido de que "las penalidades no se presumen y que su imposición se justifica solamente cuando la ley expresamente lo dispone". Bajo dicho estado de derecho no se disponía para el pago de una compensación adicional por lo adeudado en concepto de licencia por enfermedad. Al aprobarse la enmienda de 1979, la Asamblea Legislativa expresamente dispuso para ello. D. Fernández y C. Romany, *Derecho Laboral: Casos y Materiales*, Río Piedras, Ed. U.P.R., 1987, T. II, pág. 1154.

Por los fundamentos expuestos, *expedimos el auto y confirmamos el laudo emitido en el caso de autos. Se dictará sentencia que ordene a Vigilantes a cumplir con el laudo emitido por el árbitro en este caso.*