Alfonso de Cumpiano, Juez Ponente
*676 TEXTO COMPLETO DE LA SENTENCIA
La Unión de Periodistas, Artes Gráficas y Ramas Anexas (la Unión) recurre de una sentencia del Tribunal de Primera Instancia, Sala Superior de San Juan, declarando nulo y sin efecto para todos los fines legales el laudo de arbitraje que ordenó a Telemundo de Puerto Rico, Inc. (Telemundo) a restituir en su posición a la Sra. Sylvia Gómez.
Alega la Unión que erró el tribunal al determinar que el laudo no fue emitido conforme a derecho, al sustituir la interpretación del árbitro por su propia interpretación del convenio colectivo, y al concluir que el árbitro erró al no admitir y considerar un laudo emitido anteriormente. La Unión solicita que se ponga en vigor el laudo de arbitraje y en su consecuencia se ordene la restitución inmediata de la Sra. Sylvia Gómez a sus funciones de ancla en el noticiario de Telemundo.
Luego de examinar el laudo de arbitraje, la sentencia recurrida, los planteamientos de ambas partes y el derecho aplicable, expedimos el recurso, revocamos la sentencia recurrida y dejamos en vigor el laudo según emitido.
I
Los hechos y trámites procesales que dan base a la controversia son los siguientes. La Sra. Sylvia Gómez comenzó a trabajar en Telemundo en 1980 bajo contrato, en el puesto de reportera/locutora para realizar la función de ancla. Se desempeñó como ancla ininterrumpidamente durante 14 años, hasta que en julio de 1994, el Sr. Héctor Peña, Director de Noticias de Telemundo, le informó que la compañía había decidido relevarla de su labor de ancla y sustituirla por la Srta. Yvonne Solía. La Unión, en representación de la señora Gómez, procesó una querella mediante el procedimiento de Quejas y Agravios y de Arbitraje alegando que Telemundo había incumplido las disposiciones del convenio colectivo al relevar a la señora Gómez de la labor de ancla.
Las partes rindieron acuerdos de sumisión por separado sobre la controversia a dilucidarse. El árbitro determinó que el asunto a resolver era si Telemundo había violado el convenio colectivo al remover a la Sra. Sylvia Gómez de su función o labor de ancla del noticiario de las cinco de la tarde. El árbitro, según el convenio, debía resolver conforme a derecho.
El árbitro concluyó que Telemundo violó la sección 9 del Artículo XVII del convenio colectivo que requiere el consentimiento del empleado para ser transferido, cambiado o reasignado a otra labor distinta a la que fue contratado. Determinó que se requería el consentimiento de la señora Gómez para poder reasignarle labores de reportera, sin incluir la labor de ancla. Ordenó en el laudo la restitución inmediata de la señora Gómez a su función de ancla.
Ante la negativa de Telemundo de restituir a la señora Gómez en sus funciones, la Unión acudió al tribunal solicitando una orden para que la compañía cumpliera con lo dispuesto en el laudo. *677 Telemundo presentó su oposición y a la vez solicitó la revisión del laudo de arbitraje, bajo la alegación que era nulo e ineficaz por no haber sido emitido conforme a derecho. El tribunal acogió la solicitud de revisión, declaró nulo y dejó sin efecto el laudo impugnado por entender que la interpretación que hizo el árbitro de la sección 9, Artículo XVII fue incorrecta. Concluyó que la única cláusula aplicable a la controversia era la relativa a los deberes y prerrogativas de la compañía. Añadió además que erró el árbitro al no tomar en consideración el laudo emitido en un caso anterior donde se determinó que la función de ancla no es una posición reconocida en el convenio colectivo.
II
Es reconocida norma de revisión en casos de esta naturaleza que los laudos de arbitraje gozan de gran deferencia ante los tribunales en nuestra jurisdicción por ser un método ideal de resolución de disputas obrero-patronales. La función de los tribunales al revisar la validez de un laudo está limitada a determinar la existencia de fraude, conducta impropia del árbitro, falta de debido proceso de ley, ausencia de jurisdicción, omisión de resolver todas las cuestiones en controversia que se sometieron o que el mismo resulte contrario a la política pública. Febus v. Marpe Construction, 135 D.P.R. _ (1994), 94 J.T.S. 19, pág. 11547; J.R.T. v. Vigilantes, Inc., 125 D.P.R. 581, 592-593 (1990); J.R.T. v. Corp. Crédito Agrícola, 124 D.P.R. 846, 849 (198 ); J.R.T. v. Hato Rey Psychiatric Hospital, 119 D.P.R. 62, 67 (1987).
Sin embargo, aun en casos donde se permite revisar la validez jurídica del laudo, los tribunales no deben inclinarse fácilmente a invalidarlos a menos que sea evidente que no fueron resueltos conforme a derecho. Una discrepancia de criterio con lo expuesto en el laudo no justifica la intervención del tribunal. Las revisiones de laudos en los tribunales siguen un proceso similar a su función revisora de la corrección o incorrección de la sentencia emitida por un tribunal inferior o de la decisión de un organismo administrativo. No se trata de relitigar la controversia .en un proceso civil ordinario, lo que convertiría la labor del árbitro en un ejercicio inútil y desvirtuaría la naturaleza del procedimiento de arbitraje laboral. Queda claro que la revisión de un laudo de arbitraje no constituye un juicio de novo y que el tribunal debe limitarse a verificar que la determinación del árbitro sea conforme a derecho. Universidad Católica de P.R. v. Triangle Engineering Corp., 136 D.P.R. _, (1994), 94 J.T.S. 72, pág. 11951; U.I.L. de Ponce v. Destilería Serrallés, Inc., 116 D.P.R. 348, 355 (1985); Rivera v. Samaritano & Co., 108 D.P.R. 604, 609 (1979).
La principal función del árbitro en el proceso de arbitraje es la interpretación de las cláusulas del convenio colectivo. El margen de interpretación del árbitro dependerá de la claridad del lenguaje utilizado en el convenio colectivo. Aun cuando el lenguaje aparente ser claro, puede que admita interpretaciones conflictivas, en cuyo caso el árbitro tiene flexibilidad para hacer su interpretación. J.R.T. v. National Packing Co., 112 D.P.R. 162, 166-167 (1982).
Cuando las partes pactan que un laudo sea conforme a derecho, el árbitro está obligado a decidir conforme las normas legales y a respetar las normas interpretativas de derecho sustantivo dictadas por los Tribunales Supremos de Estados Unidos y Puerto Rico en el campo de derecho laboral. J.R.T. v. Vigilantes, Inc., supra; pág. 593, J.R.T. v. Hato Rey Psychiatric Hospital, supra, pág. 68; Sonic Knitting Industries v. I.L.G.W.U., 106 D.P.R. 557, 580 (1977). Por otra parte, las decisiones de los tribunales de primera instancia, las decisiones administrativas, y los laudos y escritos de árbitros reconocidos se reputarán fuentes persuasivas de derecho para el árbitro que decide conforme a derecho. J. R.T. v. Hato Rey Psychiatric Hospital, supra, pág. 68.
A la luz del marco jurídico expuesto procedemos a revisar la actuación del tribunal en la sentencia recurrida.
Las cláusulas del convenio que enmarcan la controversia, y que fueron objeto de interpretación por el árbitro y el tribunal son las siguientes:

"Artículo XII

DERECHOS Y PRERROGATIVAS DE LA COMPAÑIA

Sec. 1 - Excepto según expresamente se limita por este Convenio, y por ley, la Compañía tendrá el control de todas aquellas cuestiones relativas a la administración y el manejo de su negocio, 
*678
incluyendo, pero sin que esto se entienda como una limitación, las plantas y sus operaciones, los métodos de trabajo y producción del personal, el derecho a emplear, ascender, transferir, disciplinar, suspender o retirar empleados y en general a todas las funciones inherentes a la administración o gerencia del negocio.

Artículo XVII

DISPOSICIONES GENERALES

See. 9 - Ningún empleado será transferido, cambiado o reasignado a otra labor a la que fue contratado sin mediar su consentimiento. Entendiéndose que la transferencia, cambio o reasignación nunca implicará reducción de sueldo, status o derechos adquiridos."

-A-
El árbitro concluyó que la Sra. Sylvia Gómez fue contratada para realizar la labor de ancla, independientemente de que su clasificación o puesto fuera de reportera/locutora. Dicha conclusión está sustentada por la prueba, tomando en consideración las circunstancias de su contratación en 1980, cuando se reclutó con experiencia previa como ancla, y su desempeño continuo en función de ancla hasta 1994. Conforme el lenguaje expreso de la sección 9, Artículo XVII se requiere el consentimiento del empleado para transferirle, cambiarle o reasignarle a otra labor que no sea aquella para la que fue contratado.
En el laudo impugnado, el árbitro resolvió que la compañía tiene el poder de transferir, cambiar, o reasignar a los empleados bajo la sección 1 del Artículo XII, y que dicho poder está expresamente limitado por la sección 9 del Artículo XVII, que requiere el consentimiento del empleado para llevar a cabo el cambio de labores. Luego examinó si la actuación del patrono al relevar a la señora Gómez de sus funciones fue un acto arbitrario y caprichoso. Del análisis de la prueba concluyó que no habían estudios o encuestas que reflejasen la necesidad de un cambio en el reportero ancla y que el cambio en el reportero ancla no fue lo que motivó el ascenso del noticiario al primer lugar de audiencia, puesto que habían alcanzado el primer lugar antes del efectuarse el cambio. La determinación del árbitro de que la compañía actuó de manera arbitraria y caprichosa está sustentada por el hecho de que no se requirió el consentimiento de la señora Gómez para relevarla de su labor de ancla y por la ausencia de una razón satisfactoria para efectuar el cambio.
El Tribunal descartó la interpretación de la sección 9, Artículo XVII del convenio colectivo a la que llegó el árbitro, señalando que allí donde dice labor lo que significa es posición o puesto. Según la interpretación del tribunal, sólo se requiere el consentimiento del empleado cuando se le va a transferir, cambiar o reasignar a una posición o plaza diferente. Determinó, además, que dicha cláusula no es aplicable a situaciones de cambios de tareas o funciones. Basado en la sección 1 del Artículo XII del convenio colectivo el tribunal resolvió que el cambio de funciones era una prerrogativa absoluta de la gerencia, que la interpretación que dio el árbitro constituyó una enmienda impermisible al convenio colectivo y que dicha actuación estaba fuera de su jurisdicción. Señaló que llegaríamos a un resultado absurdo si aceptáramos su interpretación porque ésta infringe sus derechos y prerrogativas según dispuestos en la transcrita sección 1 del Artículo XII.
Sostuvo el tribunal que el árbitro falló en su deber de leer el convenio como un todo e interpretar cada parte en referencia a las demás cláusulas de forma que le diera efectividad al propósito general del mismo.
Conviene señalar que al hacer su interpretación, el árbitro utilizó el sentido común y ordinario de la palabra labor. Esa actuación es cónsona con lo aseverado por tratadistas en materia de arbitrajes laborales, a los efectos que lo aconsejable es utilizar el sentido común y ordinario de las palabras al interpretar los términos de un convenio colectivo, a menos que haya indicio que las partes deseaban darle algún sentido particular. Para que una palabra se interprete de forma distinta a la usual es necesario que se pruebe que esa fue la intención de las partes, ya sea por haberse definido de una manera específica en el propio convenio, por el contexto en que se utiliza o por su uso técnico en una industria particular. También es importante señalar que cuando existen varias posibles interpretaciones de una cláusula, no se debe adoptar una interpretación que invalide otras cláusulas del convenio o que lleve a resultados absurdos, cuando existe otra interpretación que lograría un resultado *679 justo y razonable. Véase, Elkouri & Elkouri, How Arbitration Works 480-497 (5th ed. 1997); Ray J. Schoonhoven, Fairweather's Practice and Procedure in Labor Arbitration 173-176 (3d ed.. 1991); Norman Brand, Labor Arbitration: The Strategy of Persuasion 53-60 (1987).
Contrario a lo que sostuvo el tribunal, entendemos que la interpretación del árbitro sobre la cláusula que requiere el consentimiento en las circunstancias que mediaron en este caso no nos lleva a un resultado absurdo ni se infringen indebidamente los derechos y prerrogativas de la compañía. La propia cláusula de derechos y prerrogativas de la compañía señala que esas prerrogativas están sujetas a las limitaciones expresadas en el convenio y las impuestas por ley. La Sección 9, Artículo XVII, constituye una limitación expresa en el convenio colectivo del poder de la compañía de transferir, cambiar o reasignar las labores de los empleados al requerir que esa determinación se haga con el consentimiento del empleado.
No hay indicio que el árbitro haya violado alguna norma sustantiva de derecho en su interpretación. Por el contrario, el árbitro interpretó las cláusulas del convenio colectivo dentro de los parámetros permitidos por la jurisprudencia, cumplió con las normas de interpretación de convenios colectivos en procedimientos de arbitraje y su interpretación es plausible y razonable a la luz del lenguaje utilizado en el convenio. No había base alguna para que el tribunal sustituyera la interpretación del árbitro por la suya. La actuación del tribunal se basó en una divergencia de criterios, lo que no justifica la anulación del laudo.
-B-
E1 tribunal determinó al revocar el laudo que el árbitro erró al no tomar en consideración un laudo anterior en que se determinó que la función de ancla no es una posición reconocida en el convenio colectivo. Argumenta que para que el laudo fuera conforme a derecho, el árbitro tenía que admitir y considerar el laudo anterior de acuerdo a lo resuelto en J.R.T. v. Hato Rey Psychiatric Hospital, supra. No tiene razón. En dicho caso el Tribunal Supremo indicó que en aquellos laudos que sean conforme a derecho "el árbitro no puede ignorar las normas interpretativas de derecho sustantivo emitidas por los Tribunales Supremos de Estados Unidos y Puerto Rico en el campo de derecho laboral, y que se reputarán persuasivas las decisiones de los tribunales de primera instancia, y de agencias administrativas, y los laudos y escritos de reputados árbitros".
Los tratados en materia de arbitraje sostienen que los laudos anteriores no tienen efecto de precedente en casos subsiguientes, y que los árbitros no están obligados a decidir conforme a un caso anterior aun cuando esté en disputa la misma cláusula del convenio. Elkouri & Elkouri, supra, pág. 626. Véanse además, Jay E. Grenig & R. Wayne Estes, Labor Arbitration Advocacy: Effective Tactics and Techniques §14.0 (1989); Ray J. Schoonhoven, Fairweather's Practice and Procedure in Labor Arbitration 374 (3d ed. 1991).
El caso del Tribunal Supremo de Puerto Rico citado en la sentencia y los tratadistas antes citados coinciden en que laudos previos tienen fuerza persuasiva, y que el árbitro puede discrecionalmente adoptar las normas y principios establecidos en casos anteriores cuando las cláusulas y los hechos en disputa sean similares, cuando el razonamiénto expuesto en el laudo sea claro y lógico, y cuando sirva a los mejores intereses de la justicia, de las relaciones obrero-patronales y del proceso de arbitraje. Véanse, Grenig & Estes, supra, §14.3; Ray Schoonhoven, supra, pág. 375.
En este caso, toda vez que las partes estipularon que la palabra ancla no aparece en el convenio y que el árbitro decidió que la función o labor de ancla no es una posición reconocida en el convenio, de manera cónsona con lo resuelto en el laudo anterior invocado por Telemundo, éste no hubiese aportado en nada a la controversia bajo consideración. Además, los hechos y circunstancias considerados en ese laudo y el que es objeto de este recurso son diferentes y distinguibles.
-C-
En conclusión, el árbitro decidió conforme a derecho, al interpretar el convenio colectivo. El laudo anterior, aparte de ser distinguible, es de carácter persuasivo y no hubiese variado su determinación. El tribunal sustituyó la interpretación hecha por el árbitro de la sección 9, Art. XVII por la suya. Dicha actuación es improcedente y derrota los propósitos del esquema de arbitraje laboral. El tribunal erró al invalidar el laudo emitido por el hecho de no estar de acuerdo con la interpretación del convenio *680 colectivo que hizo el árbitro, puesto que su interpretación no era contraria a derecho.
III
En virtud de todo lo anterior concluimos que erró el tribunal al declarar nulo el laudo, por haber sido éste emitido conforme a derecho. Por tanto, se expide el auto de certiorari, se revoca la sentencia recurrida, y se deja en todo vigor el laudo emitido el 13 de marzo de 1996, que ordenó la restitución inmediata de la Sra. Sylvia Gómez a su labor de ancla en el noticiario de Telemundo.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General