# 2006 DTA 27

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL V**

UNIÓN DE TRABAJADORES DE LA INDUSTRIA ELÉCTRICA Y RIEGO (UTIER)
Recurrida

v.

AUTORIDAD DE ENERGÍA ELÉCTRICA DE PUERTO RICO (AEE)
Peticionaria

Núm. KLCE-05-00099

San Juan, Puerto Rico, a 13 de diciembre de 2005

Panel integrado por su Presidente, el Juez Rivera Martínez,
y los Jueces González Rivera y Ramírez Nazario

Rivera Martínez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 31 de enero de 2005, la Autoridad de Energía Eléctrica de Puerto Rico presentó ante este foro un recurso de *certiorari*. Se recurre de la Sentencia dictada el 15 de diciembre de 2004 por el Tribunal de Primera Instancia, Sala Superior de San Juan, en el caso de la *Unión de Trabajadores de la Industria Eléctrica y Riego (UTIER) v. Autoridad de Energía Eléctrica*, la cual revoca el Laudo de Arbitraje Obrero-Patronal emitido por el Negociado de Conciliación y Arbitraje en el caso A-01-2970 sobre Cambio de Turno, Artículo XI, Sección 17 del Convenio Colectivo.

Sin el beneficio de la comparecencia de la recurrida y luego de analizar el derecho vigente, procedemos a revocar la Sentencia cuya revocación se solicita.

**I**

La Autoridad de Energía Eléctrica de Puerto Rico (en adelante la peticionaria o la Autoridad) es una corporación pública que se dedica a la conservación, desarrollo y utilización de las fuentes fluviales y de energía con el propósito de proveer a los habitantes del Estado Libre Asociado de Puerto Rico fuentes de energía en la forma más económica posible e impulsar de esta forma el bienestar general y el comercio en Puerto Rico, Título 22 L.P.R.A., Secciones 191-217. Entre las uniones que representan un sector de los empleados de la Autoridad, se encuentra la recurrida Unión de Trabajadores de la Industria Eléctrica y Riego (en adelante la recurrida o la Unión).

Al momento de los hechos, la Unión tenía negociado un Convenio Colectivo con la Autoridad de Energía Eléctrica con vigencia del 14 de noviembre de 1999 al 14 de noviembre de 2005. Entre las disposiciones del

Convenio Colectivo se encuentra el Artículo XI- Día Laborable, Jornada de Trabajo, Semana de Trabajo, Horas Regulares de Trabajo. En lo pertinente al caso de marras, el referido artículo dispone:

*"Sección 14. Las partes reconocen que los programas de trabajo (día y hora) prevalecientes en la Autoridad, son parte de las actualmente condiciones de empleo de los trabajadores.*

*Cuando la Autoridad interese algún cambio en el programa de trabajo de un trabajador o grupo de trabajadores, lo notificará por escrito al Presidente de la Unión y del Capítulo con dos catorcenas de antelación al propuesto cambio. La Unión podrá aceptar el cambio o, en su defecto, requerir por escrito la celebración de una reunión en un término no mayor de 10 días, para discutir y acordar alternativas a los cambios propuestos, tomando en consideración, tanto las necesidades del servicio como la conveniencia y antigüedad de los trabajadores.*

*La reunión será de entera obligación para ambas partes. De no lograrse acuerdos en dicha reunión, la Unión podrá someter la controversia a arbitraje especial acelerado dentro de los 10 días laborales siguientes a la celebración de la reunión. Este arbitraje será solicitado al Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos, y el árbitro será seleccionado mediante el procedimiento de terna.*

*La Autoridad publicará las plazas vacantes o de nueva creación, especificando el programa de trabajo (días y horas) de las mismas. Una vez establecidos, sólo podrán ser variados de conformidad con este procedimiento.*

*Las plazas que sean publicadas incluirán, además, la sección a la cual pertenecen.*

*Los cambios en los programas de trabajo (días y horas) se harán tomando en consideración el siguiente procedimiento al hacer la selección del personal. El criterio a usar será el de antigüedad en cada una de las clasificaciones:*

*1. Empleados Voluntarios*

*2. Empleados Temporeros*

*3. Empleados Regulares Especiales*

*4. Empleados Regulares"*

El caso de autos se origina por una solicitud de arbitraje acelerado radicada por la recurrida ante el Negociado de Conciliación y Arbitraje, en virtud del antes citado Artículo XI, Sección 14 del Convenio Colectivo. En dicha solicitud, la recurrida alegó, en síntesis, que la Autoridad violó el Convenio Colectivo al cambiarle el turno a los empleados Frankie López Rodríguez y Luis C. Casanova (en adelante los querellantes), ambos Celadores de Líneas II. Dicho cambio fue efectivo el 10 de junio de 2001.

La vista de arbitraje se llevó a cabo el 9 de julio de 2002 en las facilidades del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos. La Unión y la Autoridad no pudieron establecer un acuerdo de sumisión por lo que la árbitro, luego del correspondiente análisis del Convenio Colectivo aplicable, las contenciones de las partes y la evidencia presentada, determinó que el asunto a resolverse era el siguiente:

*"Determinar, conforme a los hechos ▪ y el Convenio Colectivo, si la Autoridad violó o no el Artículo XI, Sec. 14 del Convenio al asignarle a los querellantes el horario de trabajo de 12:30 p.m. a 9:00 p.m., efectivo la*

*catorcena que comenzó el 10 de junio de 2001.*

*De determinar que la Autoridad violó el Convenio Colectivo que la árbitro provea el remedio adecuado. De determinar que la Autoridad no violó el Convenio Colectivo que se desestime la querella."*

En la vista, las partes estipularon los siguientes hechos, los cuales fueron tomados en consideración por la árbitro al emitir el laudo objeto de la controversia ante nos:

*"1. Las plazas de Celadores II, Número 637-9602-001 y 637-9502-001, en la Oficina Técnica de Cayey, están ocupadas por los señores Frankie López Rodríguez, Seguro Social 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 y Luis Carlos Casanova, Seguro Social 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, respectivamente. Estas plazas tenían horario de 7:30 a.m. a 4:00 p.m.*

*2. El 8 de mayo de 2001, el Ing. Miguel A. López Rodríguez, Ingeniero Supervisor II, le envió una comunicación escrita al Sr. José A. Valentín Martínez, Presidente del Consejo Estatal UTIER para aquel entonces, para informar la intención del cambio de horario.*

*3. En dicha comunicación, la Autoridad propone cambiar el horario de las plazas de Celadores II de 12:30 p.m. a 9:00 p.m. efectivo el 10 de junio de 2001.*

*4. El 9 de mayo de 2001, les fue notificado el cambio a los querellantes.*

*5. La Unión solicitó el requerimiento de la celebración de una reunión para discutir los cambios propuestos.*

*6. Aun cuando la Unión no solicitó la reunión en el término de diez días, ésta se celebró el 5 de junio de 2001, en la Oficina del Ingeniero Supervisor, Sección Técnica de Cayey.*

*7. En dicha reunión, estuvieron presentes por la Unión, el Sr. José A. Valentín Martínez, Presidente del Consejo Estatal de la UTIER para aquel entonces, Pedro Rodríguez, Presidente de la UTIER Capítulo de Caguas, los querellantes Frankie López Rodríguez y Luis Carlos Casanova, ambos Celadores II. Por la Autoridad estuvo el Ing. Miguel A. López Rodríguez, Supervisor Técnico de Cayey.*

*8. Los querellantes comenzaron en su nuevo horario el 10 de junio de 2001.*

*9. Actualmente se está trabajando el horario implantado por la Autoridad."*

Mediante el laudo impugnado, la árbitro determinó que la Autoridad poseía la prerrogativa gerencial de cambiarles el horario a los Celadores por necesidades del servicio. Indicó, además, que la Sección 14 del Artículo XI faculta a la Autoridad a realizar cambios en el programa de trabajo de un trabajador o grupo de trabajadores siempre y cuando cumpla con el procedimiento establecido en dicho artículo. Concluyó que la Autoridad cumplió con el procedimiento establecido en el Artículo XI, Sección 14, para el cambio de horario y emitió el siguiente laudo:

Conforme con los hechos y el Convenio Colectivo, la Autoridad no violó el Artículo XI, Sección 14 del Convenio al asignarle a los querellantes el horario de trabajo de 12:30 p.m. a 9:00 p.m., efectivo la catorcena que comenzó el 10 de junio de 2001. Se desestima la querella.

No satisfecha con el laudo emitido por la árbitro, la Unión presentó ante el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante el T.P.I.), un recurso de revisión de laudo de arbitraje obrero patronal, en el cual alegó, en síntesis, lo siguiente:

*"1) Que el laudo emitido es nulo al no resolver todos los asuntos planteados por las partes.*

*2) Que el laudo emitido es nulo cuando el alegato sometido por la Unión no se tomó en cuenta, a pesar de haber sido acordado durante la vista que ambas partes tendrían derecho a someterlo. Al indicar en la decisión que la Unión no sometió el mismo, siendo tal aserto falso. Por lo que se violó el debido procedimiento de ley.*

*3) Que el laudo emitido es nulo, ya que el dictamen es claramente contrario al lenguaje específico del Convenio Colectivo."*

El 15 de diciembre, el T.P.I. emitió una Sentencia la cual fue notificada el 30 de diciembre de 2004. En la misma se declaró con lugar la Solicitud de Revisión presentada por la recurrida, concluyendo que se cometieron los primeros dos errores señalados, mas no así el tercero. Por lo que revocó el Laudo de Arbitraje Obrero Patronal emitido por la árbitro del Negociado de Conciliación y Arbitraje en el caso A-01-2970 sobre Cambio de Turno, Artículo XI, Sección 14 del convenio.

El T.P.I. determinó que la árbitro no resolvió lo planteado por la Unión en cuanto a que se había violado el Convenio Colectivo Sección 17 del Artículo VI. También determinó que se violó el debido proceso de ley al no considerarse el alegato sometido por la Unión, pues ello tuvo como consecuencia el que no se tomaran en consideración los argumentos de la recurrida sobre si la Autoridad estaba violando el Artículo VI Sección 17 del Convenio Colectivo.

Inconforme con la determinación del T.P.I., la recurrente presentó ante nos el recurso que hoy nos ocupa. En el mismo señala que el TPI incidió en la comisión de dos (2) errores, a saber: (1) erró al concluir que el laudo emitido en el caso A 01-2970 no resolvió todas las cuestiones presentadas y en consecuencia erró al anular el mismo, y (2) erró al concluir que se violó el debido proceso de ley al no considerarse un alegato que alegadamente la Unión presentó en el caso A 01-2970 y en consecuencia erró al anular el laudo emitido. Veamos.

## II

Según se ha expuesto, la controversia ante nuestra consideración es una que está inmersa dentro del ámbito de las relaciones obrero-patronales. En Puerto Rico, en donde los derechos de los obreros tienen raíces constitucionales, Constitución del E.L.A., Art. II, Secs. 17-18, la política pública laboral ha favorecido que las controversias obrero-patronales tengan una rápida adjudicación. *J.R.T. v. P.R. Telephone Co., Inc.*, 107 D.P.R. 76 (1978). Es por ello que en nuestra jurisdicción existe una vigorosa política pública a favor del arbitraje. *Universidad Católica v. Triangle Engineering Corp.*, 136 D.P.R. 133 (1994). Se ha reconocido, además, que el arbitraje pactado en un convenio constituye una herramienta ideal para fortalecer la negociación colectiva, pues tiende a mantener la paz y la estabilidad industrial, objetivos cardinales de nuestras leyes laborales. *J.R.T. v. Junta Administrativa del Muelle Municipal de Ponce*, 122 D.P.R. 318, 330 (1988); *J.R.T. v. Hato Rey Psychiatric Hosp.*, 119 D.P.R. 62, 68 (1987); *U.I.L. de Ponce v. Dest. Serrallés, Inc.*, 116 D.P.R. 384, 353-354 (1985); *S.I.U. de P.R. v. Otis Elevator Co.*, 105 D.P.R. 832, 836 (1977).

El arbitraje es la alternativa existente más formal a la adjudicación y litigio judicial. En este proceso, las partes en disputa someten y presentan su caso ante un tercero neutral que está investido con la facultad de rendir una decisión. Fernández Quiñones, Demetrio, *El Arbitraje Obrero-Patronal,* 1era Edición, Ediciones Forum, 2000. Un laudo es aquella resolución que dicta un árbitro, al ajustar controversias entre los patronos y los obreros. El Tribunal Supremo de Puerto Rico ha establecido, por su parte, que el arbitraje constituye el medio más adecuado para la resolución de los conflictos que surgen de la aplicación e interpretación de los convenios colectivos por ser un trámite rápido, cómodo, menos costoso y técnico. *J.R.T. v. Hato Rey Psychiatric Hosp.*, *supra*; *Pagán v. Fundación Hospital Dr. Pila*, 114 D.P.R. 224 (1983).

El arbitraje es un sustituto del litigio judicial en el sentido de que su fin es la adjudicación. Las partes están compelidas por su propio acuerdo a aceptar la decisión del árbitro como final y obligatoria. Fernández Quiñones, Demetrio, *op. cit.* Por lo que, cuando las partes de un convenio colectivo se acogen al procedimiento de arbitraje, no pueden volverse sobre sus pasos y repudiar el mismo por el mero hecho de que el fallo dictado le sea adverso. *J.R.T. v. Central Mercedita,* 94 D.P.R. 502 (1967). La autoridad del árbitro para entender en una controversia queda definida por la cláusula de arbitraje convenida, así como por el acuerdo de sumisión sometido por las partes y aquella autoridad que pueda ser conferida para confeccionar el remedio que corresponda. *López v. Destilería Serrallés,* 90 D.P.R. 245, 256 (1964). Se constituye, pues, dicho acuerdo, en definitorio de los asuntos a ser decididos y es lo que controla, junto con las disposiciones aplicables del convenio colectivo, el ámbito de autoridad del árbitro o panel de arbitraje seleccionado por las partes con tal finalidad. *Autoridad de Edificios Públicos v. U.I.E.,* 130 D.P.R. 983; *J.R.T. v. Vigilantes, Inc.,* 125 D.P.R. 581 (1990); *J.R.T. v. Corp. Crédito Agrícola,* 124 D.P.R. 846 (1989).

La principal función del árbitro en el proceso de arbitraje es la interpretación de las cláusulas del convenio colectivo. El margen de interpretación del árbitro dependerá de la claridad del lenguaje utilizado en el convenio. Aun cuando el lenguaje aparenta ser claro, puede que admita interpretaciones conflictivas, en cuyo caso el árbitro tiene flexibilidad para hacer su interpretación. *J.R.T. v. National Packing Co.,* 112 D.P.R. 162, 166-167 (1982). Ahora bien, al interpretar un convenio, el árbitro no está limitado a su contenido, sino que debe hacerlo a la luz de las normas interpretativas de derecho sustantivo emitidas por el Tribunal Supremo Federal y local en materia laboral. Además, *"[t]ambién se reputarán persuasivas las decisiones de otros tribunales de primera instancia y de agencias administrativas, así como los laudos y escritos de árbitros reputados." Condado Plaza Hotel & Casino v. Asociación de Empleados de Casino,* 149 D.P.R. 347 (1999).

El Convenio es un contrato que tiene fuerza de ley entre las partes, siempre que no contravenga las leyes, la moral y el orden público. *J.R.T. v. Junta Administrativa del Muelle Municipal de Ponce, supra; Autoridad Metropolitana de Autobuses v. J.R.T.,* 114 D.P.R. 844 (1983). Una vez las partes hayan acordado que el arbitraje es el método idóneo para resolver las disputas que entre ellas surjan, dicho acuerdo, así como los términos y condiciones del mismo, serán obligatorios para las partes. En consecuencia, compete a los tribunales respetar los acuerdos de arbitraje válidamente pactados a no ser que exista justa causa para obviarlos o sean contrarios a una clara política pública. *Pagán v. Fundación Hospital Dr. Pila, supra.* El Tribunal Supremo ha establecido las pautas sobre la doctrina de la revisión judicial en los laudos de arbitraje. Ha expresado que las normas pautadas en torno a la revisión judicial de laudos de arbitraje se han caracterizado por una marcada deferencia hacia éstos. *Unión Independiente de Empleados de la Autoridad de Edificios Públicos v. Autoridad de Edificios Públicos,* 146 D.P.R. 611 (1998). El caso *J.R.T. v. Corp. Crédito Agrícola, supra,* establece lo siguiente sobre el alcance de la revisión judicial de un laudo de arbitraje:

*"La trayectoria de nuestras decisiones en materia de arbitraje obrero-patronal se caracteriza por una marcada deferencia hacia los laudos de arbitraje. En consonancia con este principio, hemos reiterado que un laudo fundamentado en la sumisión voluntaria de las partes está sujeto a revisión judicial sólo si las partes convienen en que la controversia sometida al árbitro sea resuelta conforme a derecho. En ausencia de disposición expresa a esos efectos, un laudo sólo puede ser impugnado si se demuestra la existencia de fraude, conducta impropia del árbitro, falta del debido proceso de ley, ausencia de jurisdicción, omisión en resolver todas las cuestiones en controversia que se sometieron o que el mismo resulte contrario a la política pública.*

*Así se ha reconocido que el rol de los tribunales al revisar la validez de un laudo de arbitraje bajo un convenio colectivo es verdaderamente estrecho y limitado, de clara auto restricción o abstención judicial cuando el laudo no tiene que ser emitido conforme a derecho. U.G.T. v. Challenger Caribbean Corp. 126 D.P. R. 22 (1990); J.R.T. v. N.Y. & Puerto Rico Steamship Co., 69 D.P.R. 782 (1949). La regla general vigente en nuestra jurisdicción establece que la determinación a que se llegue tras un proceso de arbitraje merece un alto grado de deferencia por parte de los tribunales. Condado Plaza v. Asoc. Empleados de Casino, supra. Es*

*norma establecida que un laudo de arbitraje será final y los tribunales no deben sustituir el criterio del árbitro por el suyo propio. J.R.T. v. National Packing Co., supra; U.I.L. de Ponce v. Destilería Serrallés, Inc. supra."*

En otras palabras, en los casos en que no se ha pactado previamente que el laudo resultante sea conforme a derecho, el tribunal, en el proceso de revisión, no puede entrar a considerar ni la apreciación de la prueba que haya realizado el árbitro, ni la interpretación del derecho que éste haya realizado. No puede hacerlo aun cuando el árbitro se haya equivocado en esa apreciación de la prueba o en la interpretación del derecho ni siquiera cuando el tribunal revisor hubiera decidido de otra manera. *Condado Plaza Hotel & Casino v. Asociación de Empleados de Casino, supra.*

La intervención judicial en la revisión de los laudos de arbitraje se justificaría cuando las partes sometan el asunto al árbitro para que sea resuelto conforme a derecho. Esta es la excepción de la política judicial de auto restricción para la revisión de laudos de arbitraje. Este pacto deberá surgir del convenio colectivo o del acuerdo de sumisión. Ello implica que ambas partes pueden recurrir ante el foro judicial para impugnarlo y revisar su corrección y validez jurídica. *J.R.T. v. Hato Rey Psychiatric Hospital, supra.* Hasta entonces, el tribunal quedará facultado para revocar un laudo si el árbitro erró en la aplicación del derecho. *U.I.L. de Ponce v. Destilería Serrallés, Inc. supra.* En el caso *Corporación de Puerto Rico para la Difusión Pública v. Negociado de Conciliación y Arbitraje*, 156 D.P.R. ____ (2002); **2002 J.T.S. 60**, el Tribunal Supremo estableció que: *"No obstante, si el convenio colectivo dispone que los asuntos sometidos al arbitraje serán resueltos conforme a derecho, la facultad del tribunal se extiende para revisar, además, los méritos jurídicos del laudo."* Añade este caso que: *"el condicionar un laudo a que sea conforme a derecho significa, en adición, que el árbitro no podrá ignorar las normas de derecho sustantivo en el campo del derecho laboral." Id.*

Es norma claramente establecida que aun cuando se requiera que el laudo sea conforme a derecho, los tribunales no deben inclinarse fácilmente a invalidarlos a menos que sea evidente que no fueron resueltos de esa forma. No es suficiente para ello una discrepancia de criterio con lo expuesto en el laudo. *Rivera v. Samaritano & Corp.*, 108 D.P.R. 604, 609 (1979). Se ha resuelto que no es motivo para revisar, cambiar, modificar o variar un laudo y sus determinaciones de hecho, la sola alegación de apreciación y evaluación errónea de la evidencia. De igual modo, los tribunales no deben sustituir el criterio del árbitro, aun bajo la hipótesis de que hubiese provisto un remedio distinto de haberse sometido la controversia al foro judicial. *S.I.U. de P.R. v. Otis Elevator Co., supra.* Las discrepancias de criterio entre el árbitro y el Tribunal de Primera Instancia no justifican la intervención de este último con el laudo, aun cuando éste deba dictarse *"conforme a derecho"*, ya que si así fuera, se destruyesen *"los propósitos fundamentales del arbitraje de resolver las controversias rápidamente sin los costos y demoras del proceso judicial." Rivera v. Samaritano & Co., supra.*

A tono con lo anterior, se ha resuelto reiteradamente que un laudo de arbitraje goza de una naturaleza similar a la de una sentencia o decreto judicial y que la función del árbitro es análoga a la de un Tribunal de Primera Instancia, estando el foro apelativo facultado para revisar los planteamientos al respecto. *Unión General de Trabajadores v. Challenger Caribbean Corp., supra*; *U.I.L. de Ponce v. Destilería Serrallés Inc., supra.* Es decir, que los laudos de arbitraje son revisables ante los tribunales de manera análoga al procedimiento dispuesto para la revisión de agencias administrativas, las cuales gozan de gran deferencia por parte de los tribunales. *Unión Independiente de Empleados de la Autoridad de Edificios Públicos v. Autoridad de Edificios Públicos, supra*; *Corp. de Crédito y Desarrollo Comercial Agrícola v. Unión General de Trabajadores*, 138 D.P.R. 490 (1995); *U.I.L. de Ponce v. Destilería Serrallés Inc., supra.* De acuerdo con este esquema, la función del tribunal no es la de emitir un juicio *de novo* sobre los méritos de la controversia, sino la de pasar juicio sobre la corrección de lo decidido por el árbitro, confiriendo al laudo una presunción de corrección similar a la que se le atribuye a cualquier sentencia o resolución administrativa. *Unión Independiente de Empleados de la Autoridad de Edificios Públicos v. Autoridad de Edificios Públicos, supra*; *Corp. de Cred. Des. Com. Agrícola v. U.G.T.*, 138 D.P.R. 490 (1995); *U.I.L. de Ponce v. Destilería Serrallés, Inc. supra.*

Por último, en cuanto al debido proceso de ley a seguirse en los laudos de arbitraje, el Tribunal Supremo ha dispuesto que las exigencias del debido proceso de ley en un procedimiento de arbitraje se cumplen con la notificación y conocimiento de los cargos, vista y oportunidad de someter evidencia. *J.R.T. v. Hato Rey Psychiatric Hospital, supra. J.R.T. v. A.E.E.*, 117 D.P.R. 222 (1986). Se ha resuelto que el requisito fundamental del debido proceso de ley es la concesión de ser oído. *Id.* Con el beneficio del trasfondo doctrinal antes expuesto, procedemos a disponer de la controversia planteada.

## III

Según lo indicado en el acápite I, mediante el presente recurso de revisión, se cuestiona la actuación del T. P.I. al revocar el laudo emitido por la árbitro.

El Convenio Colectivo suscrito entre las partes del caso de autos, dispone que el laudo de arbitraje que se emitiera no tiene que ser conforme a derecho. Por tanto, en cuanto a la revisión del laudo impugnado, la jurisdicción de los tribunales se limita a determinar la existencia de fraude, conducta impropia, falta del debido proceso de ley, violación a la política pública, falta de jurisdicción o que el laudo no resuelve todas las cuestiones en controversia. *Condado Plaza v. Asociación de Empleados de Casinos de P.R., supra*; *J.R.T. v. Hato Rey Psychiatric Hosp., supra*; *U.I.L. de Ponce v. Destilería Serrallés, supra*.

En el caso de autos, la recurrida presentó una solicitud de revisión del laudo de arbitraje ante el T.P.I. Señaló como primer error que la árbitro no había resuelto todas las cuestiones presentadas por lo que el laudo era nulo. En cuanto a este aspecto, en su escrito ante el T.P.I., la recurrida alegó, entre otras cosas, que en el Proyecto de Sumisión interesó que se adjudicaran los derechos de las partes al implantarse el cambio de horario de los Celadores II, Frankie López Rodríguez y Luis Carlos Casanova, a base del Convenio Colectivo y las estipulaciones aplicables. [2] Indicó que se había violado el Convenio Colectivo pues al hacer el cambio de horario se le habían asignado a los Celadores II tareas ajenas a las contempladas en sus hojas de deberes.

Anteriormente establecimos que la autoridad del árbitro para entender una controversia surge de la cláusula de arbitraje contenida en el convenio colectivo, el acuerdo de sumisión sometido por las partes y aquella autoridad que pueda ser conferida para confeccionar el remedio que corresponda. *López v. Destilería Serrallés, supra*. El acuerdo de arbitraje o sumisión establece las condiciones, limitaciones y restricciones a ser observadas por el árbitro al redactar y rendir el laudo. Fernández Quiñones, Demetrio, *op. cit.* pág. 489. Es decir, que si se le somete a un árbitro un asunto, su jurisdicción estará limitada a lo que se le ha sometido para su solución. Por lo que un árbitro se excede de sus facultades si rinde un laudo que incumple con los términos del acuerdo de arbitraje o sumisión.

Por otro lado, el Reglamento para el Orden Interno de los Servicios del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos en su Artículo XIV dispone que *"en la eventualidad de que las partes no logren un acuerdo de sumisión llegada la fecha de la vista, el árbitro requerirá un Proyecto de Sumisión a cada parte previo al inicio de la misma. El árbitro determinará el(los) asunto(s) preciso(s) a ser resuelto(s) tomando en consideración el Convenio Colectivo, las contenciones de las partes y la evidencia admitida."* (Énfasis suplido.)

Las partes en el caso de marras, no pudieron ponerse de acuerdo en cuanto a la controversia precisa a ser resuelta, por lo que cada una presentó un Proyecto de Sumisión por separado. La Unión propuso el siguiente:

*"Determinar conforme los hechos, las alegaciones de las partes y el Convenio Colectivo aplicable, si la Autoridad de Energía Eléctrica cumplió o no con estos últimos al implantar un **cambio de horario** a las plazas de los Celadores II ocupados por Frankie López Rodríguez y Luis Carlos Casanova. La árbitro tendrá plena facultad remedial."*

Por su parte la Autoridad propuso el siguiente:

*"Que la árbitro determine si la Autoridad cumplió con el Artículo XI, Sec. 14, al implantar el 10 de junio de 2001 el cambio de horario a las plazas de Celadores II, ocupadas por los señores Frankie López Rodríguez y Luis Carlos Casanova."*

Las partes al presentar sus respectivos Proyectos de Sumisión establecieron el asunto específico que estaban sometiéndole a la árbitro para su resolución. Del Proyecto de Sumisión de la Unión surge que ésta limitó la facultad y jurisdicción de la árbitro a que resolviera si la Autoridad cumplió o no con el procedimiento establecido en el convenio al implantar el cambio de horario para las plazas de Celadores II. En el mismo, nada se dispuso en cuanto a las clasificaciones de deberes ni al Artículo VI Sección 17 del Convenio Colectivo.

La árbitro, tomando en consideración los Proyectos de Sumisión sometidos por cada una de las partes y de conformidad con el Reglamento anteriormente citado, determinó el asunto preciso a resolverse. Es este asunto el que delimita la facultad y jurisdicción de la árbitro para resolver el caso ante su consideración. Así, pues, la árbitro sólo tenía autoridad para resolver la controversia en cuanto al cambio de horario. Nada podía hacer en cuanto a las clasificaciones de deberes. Por tanto, la árbitro sí resolvió todas las controversias presentadas dentro de la jurisdicción que le fue conferida.

Ante esta situación, resulta forzoso concluir que el T.P.I. actuó incorrectamente al revocar el laudo emitido por la árbitro. El referido laudo no adolecía de la causal de nulidad de dejar de resolver todas las controversias. Por lo que procedía confirmar el laudo emitido por la árbitro de acuerdo con la doctrina de deferencia judicial establecida en nuestro ordenamiento jurídico.

Como segundo error, la Unión alegó en la solicitud de revisión del laudo de arbitraje que se violó el debido proceso de ley, ya que la árbitro no tomó en consideración lo planteado en el alegato que sometió, al indicar en el laudo que la recurrida no presentó el mismo cuando realmente sí lo hizo.

En el acápite II establecimos que las exigencias del debido proceso de ley en un procedimiento de arbitraje se cumplen con la notificación y conocimiento de los cargos, vista y oportunidad de someter evidencia. *J.R.T. v. Hato Rey Psychiatric Hospital, supra; J.R.T. v. A.E.E., supra.* Según surge del expediente, el procedimiento de arbitraje en el caso de marras se ajustó a las exigencias del debido proceso de ley. La recurrida tuvo la oportunidad de estar representada en la vista, oportunidad de presentar su prueba, oportunidad de contrainterrogar los testigos adversos y oportunidad de argumentar a su favor. Asimismo, se le dio la oportunidad, al igual que a la Autoridad, de presentar un alegato, el cual en efecto no fue considerado por la árbitro debido a que el mismo contenía en su epígrafe el número de caso erróneo. ▉ Ello llevó a que éste fuese archivado en el expediente de otro caso. El propósito del alegato no es presentar nueva evidencia, sino argumentar la prueba que se presentó en la vista. Por ello, la prueba desfilada en la vista era suficiente para que la árbitro emitiera el laudo.

Esto nos lleva a concluir que el T.P.I. actuó incorrectamente al determinar que se violó el debido proceso de ley y en consecuencia al revocar el laudo emitido por la árbitro. El hecho de que no se haya considerado el alegato sometido por la recurrida no implica que se le haya violado su derecho a un debido proceso de ley. Lo importante es que se cumpla con lo esbozado en *J.R.T. v. Hato Rey Psychiatric Hospital, supra; J.R.T. v. A.E. E., supra*, lo cual ocurrió en el caso de autos.

Conforme a todos los fundamentos anteriormente esbozados, resolvemos que el T.P.I. erró al revocar el Laudo de Arbitraje Obrero-Patronal emitido por la árbitro del Negociado de Conciliación y Arbitraje en el caso A-01-2970 sobre Cambio de Turno, Artículo XI, Sección 17 del Convenio Colectivo. El laudo no adolece de ninguna de las causas de nulidad reconocidas en *J.R.T. v. Corp. Crédito Agrícola, supra*.

Por los fundamentos antes expuestos, resolvemos revocar la sentencia recurrida y reinstalar el laudo emitido en este caso.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones