EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Noel Zayas Rodríguez y otros Recurridos v. Puerto Rico Telephone Co. Peticionaria | 2016 TSPR 118 195 DPR ____ |

Número del Caso: CC-2014-127

Fecha: 10 de junio de 2016

Tribunal de Apelaciones:

      Región Judicial de Bayamón, Panel VII

Abogados de la parte Peticionaria:

      Lcdo. Gregory T. Usera
      Lcda. Marisara Figueroa Silva

Abogado de la parte Recurrida:

      Lcdo. Edwin Rivera Cintrón

Materia: Derecho laboral: la Ley Núm. 180-1998, según enmendada, conocida como la Ley de Salario Mínimo, Vacaciones y Licencia por enfermedad de Puerto Rico, 29 LPRA sec. 250 et seq., no obliga a un patrono privado a liquidar el balance acumulado de licencia por enfermedad una vez el empleado cesa definitivamente sus labores en la empresa. Sin embargo, esto no impide que el patrono provea mayores beneficios y se obligue mediante la contratación individual o colectiva a liquidar el balance acumulado de dicha licencia.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Noel Zayas Rodríguez y otros

   Recurridos

              v.                  CC-2014-127

Puerto Rico Telephone Co.

   Peticionaria

Opinión del Tribunal emitida por la Jueza Presidenta ORONOZ RODRÍGUEZ

En San Juan, Puerto Rico, a 10 de junio de 2016.

En esta ocasión debemos interpretar la Ley Núm. 180-1998, según enmendada, conocida como la *Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico*, 29 LPRA sec. 250 et seq. (Ley Núm. 180). Específicamente, nos corresponde determinar si la referida Ley obliga a un patrono privado a liquidar el balance acumulado de licencia por enfermedad una vez el empleado cesa definitivamente sus labores en la empresa.

Atendidos los planteamientos de ambas partes, resolvemos que la Ley Núm. 180 no impone dicha obligación. Esto, sin embargo, no impide que el

patrono provea mayores beneficios y se obligue mediante la contratación individual o colectiva a liquidar el balance acumulado de dicha licencia. Veamos.

**I**

Los señores Noel Zayas Rodríguez, Wilfredo Guzmán Cardona y José J. Gómez Falgas (en conjunto, los recurridos), empleados gerenciales de la Puerto Rico Telephone Company (PRTC), comenzaron a trabajar en dicha empresa el 21 de junio de 1982, el 5 de mayo de 1994 y el 1 de julio de 1996, respectivamente. Varios años después, el 13 de abril de 2009, fueron destituidos.

Por ese motivo los recurridos presentaron una demanda en contra de la PRTC sobre despido injustificado al amparo de la Ley Núm. 80-1976, 29 LPRA sec. 185 et seq. (Ley Núm. 80), discrimen por razón de edad bajo la Ley Núm. 100-1959, 29 LPRA sec. 146 et seq. (Ley Núm. 100), difamación, daños y perjuicios, entre otros. En lo pertinente a la controversia de autos, los recurridos solicitaron el pago de ciertas sumas de dinero por concepto de la liquidación de la licencia por enfermedad acumulada.[1] Fundamentaron su reclamo en la práctica interna de la compañía conocida como la Práctica RH-026-A sobre *Licencia por Enfermedad para Empleados Gerenciales*

---

[1] El señor Zayas Rodríguez reclamó 46 días de licencia por enfermedad equivalentes a $7,050.88; el señor Guzmán Cardona reclamó 74 días equivalentes a $7,210.56; y el señor Gómez Falgas reclamó 54 días equivalentes a $4,795.20. Asimismo, solicitaron una cantidad igual a la adeudada como penalidad conforme a las disposiciones de Ley Núm. 180.

(Práctica RH-026-A) -específicamente en una disposición de ésta denominada "Banco General"-, así como en la Ley Núm. 180, supra.

La PRTC contestó la demanda y negó las alegaciones. Entre sus defensas, adujo que los recurridos fueron despedidos por justa causa toda vez que incumplieron con las normas y políticas de la compañía. Al respecto, indicó que los recurridos trabajaban en la División de Servicios de Seguridad y estaban encargados de los sistemas electrónicos y controles de seguridad de la empresa. Añadieron que una investigación reveló que en múltiples ocasiones los recurridos abandonaron sus puestos de trabajo y manipularon el sistema electrónico de seguridad para registrar horas de entrada y salida que eran falsas.

Luego de otros trámites procesales, la PRTC presentó una *Moción de Sentencia Sumaria Parcial* y solicitó que se desestimara la reclamación al amparo de la Ley Núm. 180, pues no existía controversia en cuanto a que los recurridos no tenían derecho a la liquidación del balance de la licencia por enfermedad. Alegaron que: (1) mediante la Práctica RH-026-A la PRTC no se obligó a liquidar el balance de la licencia por enfermedad a los empleados que cesaran en sus labores por razones que no fueran la jubilación;[2] (2) la Ley Núm. 180 o el anterior Decreto

---

[2] Para una mejor compresión, adelantamos la parte de la Práctica RH-026-A pertinente a la controversia:

Mandatorio Núm. 73 -aplicable a la industria de las comunicaciones- no le imponía la obligación de liquidar el balance acumulado de licencia por enfermedad al momento del empleado cesar en el trabajo; y (3) de los recurridos prevalecer en su demanda sólo tendrían derecho a los remedios que establecen la Ley Núm. 80 y la Ley Núm. 100.

Los recurridos se opusieron a la solicitud de sentencia sumaria parcial. Plantearon que el balance de días acumulados y no utilizados de la licencia por enfermedad formaba parte del patrimonio del empleado y su liquidación no podía estar condicionada a la jubilación. Añadieron que este balance se nutrió del tiempo trabajado, por lo que es parte del salario según ese término se define en la Ley Núm. 180. Por lo tanto, sostuvieron que la disposición de la Práctica que condiciona la liquidación de la licencia por enfermedad a la jubilación del empleado es nula por tratarse de una retención de salarios contraria a la ley.

Tras una vista argumentativa, el Tribunal de Primera Instancia dictó una Resolución en la cual declaró sin lugar la *Moción de Sentencia Sumaria Parcial.* Determinó

---

Comenzando el 1ro de enero de 2006 el total de días de licencia por enfermedad que tengan acumulados los empleados gerenciales serán segregados como sigue:
[…]
3. En el **Banco Congelado** estará el balance de licencia por enfermedad congelado al 31 de diciembre de 2005. <u>Sólo se pagará cuando el empleado termine su empleo para acogerse a la jubilación</u>.

que la Práctica RH-026-A es nula en cuanto condiciona la liquidación del balance acumulado de la licencia por enfermedad a la jubilación del empleado. Añadió que el balance de licencia por enfermedad es el resultado del trabajo realizado por el empleado, por lo que procede su liquidación independientemente de la causa de la terminación en el empleo.

Luego de presentar sin éxito una moción de reconsideración, la PRTC acudió al Tribunal de Apelaciones. Adujo que el Tribunal de Primera Instancia erró al equiparar el balance acumulado de la licencia por enfermedad con el salario y al declarar nula la disposición que condiciona la liquidación de dicho balance a la jubilación del empleado. Sin embargo, el Tribunal de Apelaciones confirmó la Resolución recurrida. Aunque concluyó que la Ley Núm. 180 y el Decreto Mandatorio Núm. 73 no disponen expresamente acerca del derecho del empleado a la liquidación de la licencia por enfermedad, interpretó, al igual que el foro de primera instancia, que el balance acumulado de dicha licencia constituye parte del salario, por lo cual no puede quedar sujeto a condición.[3]

Por esta razón la PRTC recurrió ante este Tribunal y sostuvo que el Tribunal de Apelaciones erró al concluir que el balance de días acumulados en concepto de licencia

---

[3] De esta determinación la PRTC presentó una *Moción de Reconsideración* que fue declarada no ha lugar.

por enfermedad es parte del salario y que el empleado tiene derecho a su liquidación cuando cesa definitivamente en el empleo. Señaló también como error que el foro intermedio declarara la nulidad de la Práctica RH-026-A.

Por su parte, los recurridos comparecieron y argumentaron que, aunque reconocían que la Práctica RH-026-A concede mayores beneficios de licencia por enfermedad que la Ley Núm. 180, la PRTC no podía condicionar la liquidación de dicho balance a la jubilación del empleado. Ello, pues la licencia por enfermedad está comprendida dentro del término salario en la Ley Núm. 180.

Con el beneficio de las comparecencias, procedemos a resolver.

II

A.

La Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico reconoce y protege varios de los derechos más importantes de los trabajadores. Uno de los derechos incluidos en el Art. II, Sec. 16 de nuestra Constitución es el derecho del trabajador "a protección contra riesgos para su salud o integridad personal en su trabajo o empleo". De modo que la licencia por enfermedad es una protección consustancial a este derecho del empleado. García v. Aljoma, 162 DPR 572, 583

(2004). Debido a la importancia de la licencia por enfermedad como medio para que el trabajador pueda sostenerse económicamente cuando tenga que enfrentar un problema de salud, hemos expresado que ésta es:

> [a]lgo más que un beneficio marginal común y corriente de un empleado. Es una necesidad fundamental para el trabajador puertorriqueño que surge de una necesidad involuntaria no imputable al trabajador. Cuando esta licencia se hace acumulativa, tanto el patrono como el empleado derivan beneficios de la misma, pues con ella se disuade el ausentismo y se le provee al trabajador la oportunidad de **acumular la licencia para cuando la necesite por razones de enfermedad.** Sucesión Álvarez Crespo v. Pierluisi, 150 DPR 252, 270 (2000) (citando de J.R.T. v. Junta Adm. Muelles Mun. de Ponce, 122 DPR 318, 332-333 (1988)) (énfasis suplido); J.R.T. v. Vigilantes, Inc., 125 DPR 581, 594 (1990).

Al presente, la licencia por enfermedad en el contexto de la empresa privada (así como de las corporaciones públicas que operan como empresas privadas) está reglamentada por la Ley Núm. 180. Esta Ley es producto de estatutos que tuvieron su origen en la Ley Núm. 8-1941, primera legislación sobre salario mínimo aprobada en Puerto Rico. La Ley Núm. 8-1941 fue derogada por la Ley Núm. 96-1956 (Ley Núm. 96), la cual estableció la Junta de Salario Mínimo como entidad encargada de implementar la legislación sobre salario mínimo y los beneficios para los empleados de cada industria a través de la aprobación de decretos mandatorios.[4] Uno de estos

---

[4] R. Delgado Zayas, op. cit. págs. 45-46; A. Acevedo Colón, Legislación Protectora del Trabajo Comentada, San Juan, Puerto Rico, 7ma ed.,

decretos fue el Decreto Mandatorio 73, aplicable a los trabajadores de la industria de las comunicaciones.

Posteriormente, la Ley Núm. 96 fue enmendada por la Ley Núm. 84-1995 (Ley Núm. 84) a los efectos de establecer la nueva política pública con relación a los beneficios plasmados en los distintos decretos mandatorios.[5] Entre sus propósitos estuvo uniformar y establecer los beneficios mínimos de vacaciones y de licencia por enfermedad. Jiménez, Hernández v. General Inst., Inc., 170 DPR 14, 53-54 (2007).[6] En consecuencia, la Ley Núm. 84 derogó toda disposición que estuviera en conflicto con sus preceptos. De esta forma, las normas que estableció la Ley Núm. 84 sobre el uso, disfrute y pago de las licencias de vacaciones y enfermedad se extendieron de manera uniforme a todos los empleados de la industria privada.[7]

---

2001, pág. 37. Véase, Hilton Hotels International, Inc. v. Junta de Salario Mínimo, 74 DPR 670, 722 (1953).

[5] Exposición de Motivos de la Ley Núm. 84.

[6] Exposición de motivos de la Ley Núm. 84. Informe Conjunto de las Comisiones de Gobierno y de Trabajo y Asuntos del Veterano de la Cámara de Representantes sobre el P. de la C. 1967 de 13 de julio de 1995, págs. 18-19. En cuanto a la falta de uniformidad, la Asamblea Legislativa recalcó que: "[a]grava la situación el que, mientras algunos empleados disfrutan, en virtud de decretos, de los beneficios de vacaciones y licencias por enfermedad, miles de otros empleados, carecen de tan importantes beneficios marginales". Asimismo, el legislador entendió que la confusión generada por la multiplicidad de salarios mínimos y diferentes beneficios operaba en detrimento de las oportunidades de desarrollo económico y la creación de nuevos empleos, provocando altas tasas de desempleo. Exposición de Motivos de la Ley Núm. 84.

[7] Los empleados que al entrar en vigencia la Ley Núm. 84 estuvieran cubiertos por decretos mandatorios que concedieran mayores beneficios de licencias, seguirían estando cubiertos por dichos decretos. Art. 5 de la Ley Núm. 84. Véase, R. Delgado Zayas, op. cit. pág. 206; Jiménez, Hernández v. General Inst., Inc., supra, pág. 56. Ello, pues la Ley Núm. 84 sólo reconoció una acumulación de licencia por

En lo pertinente al caso de autos, el texto original del Art. 18(n) del Proyecto de la Cámara 1967 de 31 de mayo de 1995 (P. de la C. 1967),[8] el cual posteriormente se convirtió en la Ley Núm. 84, disponía lo siguiente sobre los beneficios por vacaciones y enfermedad:

> (g) […]
> (h) […]
> (i) […]
> (j) […]
> (k) A solicitud escrita del empleado, el patrono podrá permitir que las vacaciones incluyan días no laborables comprendidos dentro del período en que haya de disfrutar las vacaciones.
> (l) En caso de que el empleado cese en su empleo, el patrono le hará efectivo el total hasta entonces acumulado, aunque sea menos de un año.
> (m) A solicitud escrita del empleado, el patrono podrá permitir la liquidación parcial de la licencia por vacaciones acumulada y en exceso de diez (10) días.
> (n) La licencia por enfermedad no usada por el empleado durante el curso del año quedará acumulada para los años sucesivos hasta un máximo de quince (15) días. La licencia por enfermedad acumulada en exceso de dicho máximo será liquidada una vez al año en una fecha previamente establecida y anunciada por el patrono.

Durante el debate legislativo para la aprobación del P. de la C. 1967 surgieron objeciones en torno a la propuesta sobre la liquidación de la licencia por enfermedad, según lo dispuesto en el Art. 18(n) del proyecto original. En particular, el entonces Secretario de Desarrollo Económico y Comercio expresó que no debía

---

vacaciones a razón de un día y cuarto (1¼) por mes y licencia por enfermedad a razón de un (1) día por mes.

[8] Luego de ser enmendado durante el trámite legislativo –sobre lo cual abundamos a continuación– el Art. 18(n) del proyecto original fue renumerado y aprobado como el Art. 5(n) de la Ley Núm. 184.

requerirse por ley la liquidación de la licencia por enfermedad, sino dejarlo a los acuerdos entre la empresa y el empleado.[9] Por su parte, la Asociación de Industriales de Puerto Rico expresó que:

> [e]l propósito de la licencia por enfermedad no es convertirla en un bono económico, sino garantizar que cada empleado tendrá una reserva de días, un seguro, para utilizarlo en caso que lo necesite por enfermedad prolongada. Ese es el fundamento filosófico de una reserva de días de licencia por enfermedad, y no el proveer un pago adicional. La propuesta de liquidación desvirtúa el objetivo de una reserva de días de licencia por enfermedad, constituye un costo operacional adicional que no existe en las jurisdicciones que compiten en Puerto Rico, y va en contra de los objetivos de desarrollo económico del proyecto.[10]

Como resultado de éstas y otras ponencias, el Art. 18(n) del P. de la C. 1967 fue enmendado a los efectos de **eliminar lo relacionado con la liquidación de la licencia por enfermedad.** Como se explicó en el Informe Conjunto de la Cámara de Representantes, la Ley dejó el espacio necesario para la negociación entre patronos y empleados:

> Al establecer condiciones mínimas, la Ley permite la negociación colectiva sobre cualquiera de los beneficios dispuestos, incluyendo lo relativo a la acumulación de licencias a un tipo mayor, **la liquidación de**

---

[9] "También se ha traído a nuestra atención lo indeseable de requerir mandatoriamente [sic] la liquidación monetaria. Por un lado, dichas críticas señalan que es posible que el empleado particular prefiera mantener la acumulación de la licencia en exceso de los quince días y no recibir la liquidación monetaria. Por otro lado, se nos señala que muchas empresas, por razones económicas de peso, no pueden realizar dichas liquidaciones monetarias. El impacto económico sustancial de establecer una nueva norma y requerir uniformemente dicha liquidación para todas las industrias, podría ser contraproducente y detrimental [sic] a la estabilidad de los empleos". Memorando del Secretario del Departamento de Desarrollo Económico y Comercio de 12 de julio de 1995, págs. 18-19.

[10] Memorando, Asociación de Industriales de Puerto Rico de 13 de julio de 1995, págs. 3-4.

**licencia por enfermedad acumulada en exceso** a modo de incentivo o su acumulación sobre lo dispuesto para la eventualidad de una enfermedad prolongada.[11]

En consecuencia, el Art. 18 del P. de la C. 1967 fue renumerado como el Art. 5 de la Ley Núm. 84, cuyo inciso (n) fue finalmente aprobado como sigue:

(g) […]
(h) […]
(i) […]
(j) […]
(k) A solicitud escrita del empleado, el patrono podrá permitir que las vacaciones incluyan días no laborables comprendidos dentro del período en que haya de disfrutar las vacaciones.
(l) En caso de que el empleado cese en su empleo, el patrono le hará efectivo el total hasta entonces acumulado, aunque sea menos de un año.
(m) A solicitud escrita del empleado, el patrono podrá permitir la liquidación parcial de la licencia por vacaciones acumulada y en exceso de diez (10) días.
(n) <u>La licencia por enfermedad no usada por el empleado durante el curso del año quedará acumulada para los años sucesivos hasta un máximo de quince (15) días.</u>[12]

Por último, tres años después de las enmiendas realizadas por la Ley Núm. 84 se aprobó la Ley Núm. 180, la cual derogó la Ley Núm. 96.[13] **La Ley Núm. 180 mantuvo los beneficios mínimos con respecto a las licencias por**

---

[11] Informe Conjunto de las Comisiones de Gobierno y de Trabajo y Asuntos del Veterano de la Cámara de Representantes sobre el P. de la C. 1967 de 13 de julio de 1995, págs. 17-18.

[12] Los incisos (g)(h)(i)(j)(k) y (m) versan exclusivamente sobre la licencia por vacaciones. Por ello, al encontrarse entre medio de estos incisos, la única interpretación lógica del inciso (l) –y acorde con la clara intención del legislador de excluir la liquidación de la licencia por enfermedad– es que éste se refiere únicamente a la licencia por vacaciones.

[13] La Ley Núm. 180 no afectó los beneficios de los empleados que a la fecha de su aprobación disfrutaban, en virtud de decretos mandatorios, de niveles de acumulación de licencia de vacaciones y enfermedad más favorables.

**vacaciones y enfermedad**, fijando su acumulación a razón de un día y cuarto (1¼) de vacaciones y un (1) día de licencia por enfermedad por cada mes de trabajo de no menos de 115 horas.[14] Algunos de los cambios que la Ley introdujo se fundamentaron en que "la concesión de beneficios por encima del mandato estatutario, deb[ía] establecerse a tenor con la realidad económica y las condiciones del mercado".[15] Así, la Ley Núm. 180 estableció los beneficios mínimos, dejando a cada patrono conceder (o a los sindicatos negociar) mayores beneficios según la capacidad económica y los intereses de las partes. En sintonía con lo anterior, **la Ley Núm. 180 incorporó las disposiciones de la Ley Núm. 84 relacionadas al uso, disfrute y paga de las licencias por vacaciones y enfermedad.**[16] Así, el Art. 6 de la Ley Núm. 180, dispone en lo pertinente que:

> (f) […]
> (g) […]
> (h) […]
> (i) A solicitud escrita del empleado, el patrono podrá permitir que las vacaciones incluyan días no laborables comprendidos dentro del período en que haya de disfrutar las vacaciones, y/o los días no laborables inmediatamente antes o después de dicho período de vacaciones.

---

[14] Igualmente, reguló que éstas se usarán y pagarán a base del día regular de trabajo al momento de usarse o pagarse el beneficio, en una suma no menor al salario regular por hora devengado en el mes en que se acumuló la licencia. 29 LPRA sec. 250d (c) y (d).

[15] Exposición de Motivos de la Ley Núm. 180.

[16] Jiménez, Hernández v. General Inst., Inc., supra, pág. 53. Así lo reconocieron los tribunales inferiores en este caso al expresar que:
> Posteriormente, la Ley 96, según enmendada por la Ley 84, fue derogada por la Ley 180-1998, **que incorporó**, en esencia, **todas las disposiciones relativas a acumulación, uso, disfrute y paga de licencias de vacaciones y enfermedad.** Sentencia del TA, Apéndice, pág. (énfasis suplido).

(j) En caso de que el empleado cese en su empleo, el patrono hará efectivo al empleado el total hasta entonces acumulado, aunque sea menos de un año.
(k) A solicitud escrita del empleado, el patrono podrá permitir la liquidación parcial de la licencia por vacaciones acumulada y en exceso de diez (10) días.
(*l*) La licencia por enfermedad no usada por el empleado durante el curso del año quedará acumulada para los años sucesivos hasta un máximo de quince (15) días.[17]

Según se puede apreciar, la Ley Núm. 180 dejó inalteradas las disposiciones de la Ley Núm. 84 en torno a la liquidación de las licencias por vacaciones y enfermedad.[18]—Al igual que el Art. 5(n) de dicha Ley, el Art. 6(l) de la Ley Núm. 180 no estableció una obligación para el patrono de liquidar el balance acumulado de la licencia por enfermedad, lo que sí hizo expresamente con la licencia por vacaciones.[19] Como vimos, la obligación de liquidar la licencia por enfermedad fue rechazada y eliminada por el legislador al aprobar el Art. 18(n) de

---

[17] 29 LPRA sec. 250d (énfasis suplido).

[18] En cuanto a la acumulación de la licencia por enfermedad, la Ley Núm. 180 mantuvo dicha acumulación de días para los años sucesivos hasta un máximo de 15 días. Por otro lado, puede apreciarse que los incisos (i)(j)(k) y **(l)** del Art. 6 de la Ley Núm. 180, entre otros, son para todos los efectos una réplica de los incisos (k)(l)(m) y **(n)** del Art. 5 de la Ley Núm. 84.

[19] De otra parte, como indicamos, las disposiciones sobre los beneficios de licencias por enfermedad y vacaciones provienen de diversos decretos mandatorios. Por lo tanto, las interpretaciones que se han hecho sobre dichos decretos nos sirven de guía en la interpretación de las disposiciones pertinentes de la Ley Núm. 180. A tales efectos, una Opinión del Secretario del Trabajo acerca de la licencia por enfermedad en el contexto de la empresa privada concluyó que "**cuando el empleado cesa en la empresa, por despido o renuncia, no tiene derecho a que se le liquiden los días de licencia por enfermedad acumulados y no usados hasta esa fecha**". Opinión 91-1 del Secretario del Trabajo y Recursos Humanos de Puerto Rico de 1 de mayo de 1991, pág. 4. (Énfasis suplido).

la Ley Núm. 84, cuyo texto fue adoptado en el Art. 6 de la Ley Núm. 180.[20]

Ello, sin embargo, no es óbice para que el patrono, con el propósito de atraer, incentivar o retener a su personal, provea mediante la contratación individual o colectiva mayores beneficios de licencia por enfermedad. JRT v. Vigilantes, supra, pág. 59; Opinión 91-4 del Secretario del Trabajo y Recursos Humanos de Puerto Rico de 1 de noviembre de 1991. En tales casos, el patrono establecerá los criterios para la acumulación, disfrute y pago de la licencia por enfermedad, siendo la única limitación que dicho contrato cumpla con las condiciones mínimas requeridas por legislación.[21]

B.

El 20 de marzo de 2008, la PRTC estableció la Práctica RH-026-A para distribuir el beneficio de

---

[20] **Valga reiterar que el inciso (j) del Art. 6 de la Ley Núm. 180, al igual que el anterior inciso (l) del Art. 18 de la Ley Núm. 84, se refiere exclusivamente a la liquidación de la licencia por vacaciones. Es por ello que el inciso (j) del Art. 6 se encuentra ubicado entre medio de los incisos (e)(f)(g)(h)(i) y (k), todos los cuales versan sobre la licencia por vacaciones.** Al respecto, comenta Ruy Delgado Zayas que "aunque la ley no lo dice expresamente, es claro, a nuestro juicio, que esta disposición se refiere a vacaciones. La norma es que la licencia por enfermedad no se liquida cuando el empleado cesa en su empleo". Delgado Zayas, op. cit. pág. 229. Según lo expone el licenciado Delgado Zayas, a diferencia de la licencia por enfermedad, la cual es una protección ante la contingencia de que el empleado sufra un quebranto de salud, la licencia por vacaciones se liquida ya que se entiende que corresponde al pago de los días de descanso que no fueron disfrutados por el empleado. Véase, R. Delgado Zayas, op. cit. pág. 83.

[21] Por ejemplo, mediante la Práctica RH-026-A la PRTC no solo proveyó para la liquidación del balance acumulado en el "Banco Congelado" en caso de que el empleado se acoja a la jubilación, sino que en varias instancias estableció niveles de acumulación más favorables que los de la Ley Núm. 180. Apéndice, pág. 127.

licencia por enfermedad aplicable a sus empleados gerenciales.[22] En cuanto a la acumulación, la Práctica RH-026-A dispuso que empleados gerenciales como los recurridos acumularían días de licencia por enfermedad a razón de un día y medio por cada mes de no menos de cien horas de trabajo.[23] Por su parte, los empleados que ingresaran a partir del 24 de septiembre de 2007 acumularían licencia por enfermedad a razón de un día laborable por cada mes en que hayan trabajado por lo menos 115 horas.[24] Asimismo, se estableció el siguiente esquema de distribución de los días acumulados de licencia por enfermedad:

> Comenzando el 1ro de enero de 2006 el total de días de licencia por enfermedad que tengan acumulados los empleados gerenciales serán segregados como sigue:
>
> 1. En **Balance Acumulado** estarán los días que el empleado ha acumulado, a partir de su último aniversario y los acumulados durante su primer año de empleo para el caso de nuevos ingresos.
>
> 2. La **Reserva** se nutrirá de aquellos balances acumulados y no utilizados del año aniversario anterior hasta un máximo de 18 días en el caso de empleados que ingresaron en o antes de 23 de septiembre de 2007 y de 15 días en el caso de empleados que ingresen a partir del 24 de septiembre de 2007.
>
> 3. En el **Banco Congelado** estará el balance de licencia por enfermedad congelado al 31 de diciembre de 2005. Sólo se pagará cuando el

---

[22] La Práctica RH-026-A enmendó la anterior Práctica RH-026 de la PRTC sobre licencia por enfermedad, pero en lo pertinente a esta controversia ello no implicó cambio alguno.

[23] Esta acumulación es mayor que el mínimo que establece la Ley Núm. 180 en su Art. 6(a), 29 LPRA sec. 250d (a).

[24] A partir de los 10 años de servicio estos empleados acumularían licencia por enfermedad a razón de 1 ¼ día laborable por cada mes en que hayan trabajado no menos de 115 horas. Apéndice, pág. 78.

<u>empleado termine su empleo para acogerse a la jubilación.</u>[25]

De esta forma, la PRTC concedió mayores beneficios que los dispuestos en la Ley Núm. 180, al establecer el pago de la licencia por enfermedad en el "Banco Congelado" en caso de que el empleado se acogiera a la jubilación.

C.

Por último, antes de pasar a resolver es conveniente revisar brevemente las normas de hermenéutica jurídica. Sabemos que al llevar a cabo la interpretación de las leyes el propósito es hacer cumplir la intención del legislador. <u>Const. José Carro v. Mun. Dorado</u>, 186 DPR 113, 126 (2012). Al respecto, el Código Civil contiene varias disposiciones que nos orientan en este ejercicio. Así, el Art. 14 del Código Civil, 31 LPRA sec. 14, dispone que cuando la letra de la ley es clara y libre de toda ambigüedad, ésta no debe ser menospreciada bajo el pretexto de cumplir con su espíritu. No obstante, hemos dicho que aunque nos encontremos ante una disposición clara, ello no significa que estemos impedidos de

---

[25] Según expresaron los recurridos: "[e]l objeto de reclamación en el caso de autos, en lo que respecta a la controversia ante este Honorable Tribunal, reiteramos, es el pago de las cantidades acumuladas en el 'Banco Congelado' creado por la PRTC mediante la promulgación de la Práctica RH-26A". *Alegato de la parte recurrida*, pág. 11. Cabe mencionar que antes de la aprobación de las Prácticas RH-026 y RH-026A por la PRTC, la acumulación de la licencia por enfermedad en la compañía se regía por el Decreto Mandatorio Núm. 73, aplicable a la industria de las comunicaciones, el cual no incluía disposición alguna relacionada con la liquidación del balance de esta licencia. Véase, Decreto Mandatorio Núm. 73, pág. 6.

interpretarla, pues todas las leyes requieren algún ejercicio de interpretación. Const. José Carro v. Mun. Dorado, supra, pág. 126; IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712, 739 (2012).

Sin embargo, cuando el texto de la ley es ambiguo es necesario ir más allá de su letra para auscultar la intención del legislador. Al respecto, el Art. 19 del Código Civil, 31 LPRA sec. 19, dispone que: "[e]l medio más eficaz y universal para descubrir el verdadero sentido de una ley cuando sus expresiones son dudosas, es considerar la razón y espíritu de ella, o la causa o motivos que indujeron al legislador a dictarla".[26] Para realizar esta búsqueda es preciso examinar el historial legislativo del estatuto, incluyendo el texto propiamente del proyecto de ley y sus enmiendas a lo largo del trámite legislativo, el Diario de Sesiones, los informes de las comisiones, las ponencias presentadas, entre otros recursos. Dorante v. Wrangler de P.R., 145 DPR 408, 417 (1998). R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, San Juan, Pubs. J.T.S., 1987, págs. 243-243. Además, "se puede acudir a las circunstancias existentes en el momento de la aprobación de la ley, la ocasión en que fue aprobada y el mal que trata de evitar, el remedio que se intenta

---

[26] "Por espíritu de la norma... ha de entenderse el sentido y contenido inmanente de la misma, y por finalidad, su intencionalidad, eficacia o resultado de su aplicación". J. Puig Brutau, *Introducción al Derecho civil*, Ed. Bosch, 1981, pág. 324.

aplicar, la legislación anterior y las consecuencias de la interpretación propuesta". R.E. Bernier y J.A. Cuevas Segarra, *op. cit.*, pág. 279 (haciendo referencia a varias Opiniones de este Tribunal).

Por su parte, en cuanto a los estatutos de carácter reparador hemos expresado que su interpretación debe hacerse liberalmente a los fines de hacer cumplir su propósito. IFCO v. Aut. Desp. Sólidos, supra, pág. 741. No obstante, esta interpretación liberal no puede tener el efecto de descartar la voluntad del legislador cuando se trata de una situación específicamente prevista por éste y su intención sobre cómo resolverlo es clara.

Enmarcada en este contexto la interpretación de los estatutos pertinentes, procedemos a disponer de esta controversia.

**III**

Tras ser despedidos, los recurridos demandaron a la PRTC aduciendo diversas causas de acción, entre éstas el cobro de salarios al amparo de la Ley Núm. 180. Mediante ésta reclamaron la liquidación del balance de la licencia por enfermedad acumulado en el denominado "Banco Congelado" de la Práctica RH-026-A. Por su parte, la PRTC solicitó que se dictara sentencia sumaria parcial a los efectos de determinar que los recurridos no tenían derecho al pago de dicho balance. Fundamentó su solicitud en que la Ley Núm. 180 no impone la obligación de

liquidar la licencia por enfermedad y que, de otra parte, la Práctica RH-026-A dispone que la liquidación del balance acumulado se pagará al terminarse la relación obrero-patronal por motivo de jubilación. Por lo tanto, al haber sido destituidos, la PRTC sostuvo que los recurridos no eran acreedores a dicho pago.

Los recurridos arguyeron que el balance acumulado era producto de su trabajo y que la Práctica RH-026-A, al condicionar la liquidación de dicho balance a la jubilación del empleado, es nula por tratarse de una retención de salarios contraria a la Ley Núm. 180. El Tribunal de Primera Instancia declaró no ha lugar a la solicitud de sentencia sumaria parcial y el Tribunal de Apelaciones confirmó. No obstante, como pasamos a explicar erraron los foros inferiores al resolver de este modo.

Primero, debemos precisar que aunque la licencia por enfermedad es un **beneficio** de gran importancia que tiene el trabajador, ésta no es parte del salario en el sentido en que el Art. 4 de la Ley Núm. 180 define ese término.[27]

---

[27] "Salario incluye sueldo, jornal y toda clase de compensación, sea en dinero, especie, servicios, facilidades o combinación de cualesquiera de ellos; pero no incluirá sino dinero cuando se trate de salario mínimo prescrito bajo las disposiciones de esta Ley, a menos que el Secretario disponga o autorice otra cosa". Art. 4, inciso (h) de la Ley Núm. 84.
Por su parte, el Art. 11, inciso (a) dispone que:

> Todo obrero o empleado que por su trabajo reciba compensación inferior a la prescrita en esta Ley o en un convenio colectivo o en un contrato individual de trabajo tendrá derecho a cobrar mediante acción civil la diferencia adeudada hasta cubrir el importe total de la compensación que le corresponda, por concepto de salario,

La retribución en que consiste el salario ya fue recibida por el empleado a manera de pago. Aunque la acumulación de días en la licencia por enfermedad se basa en las horas trabajadas, ello por sí sólo no lo convierte en salario. Es por eso que el patrono puede establecer normas sobre certificaciones médicas o informes periódicos sobre la enfermedad del empleado, sin que ello pueda interpretarse como una violación de la Ley Núm. 180. Delgado Zayas, op. cit., pág. 82.

Entenderlo así sería contrario a la naturaleza de la licencia por enfermedad como un **beneficio** contingente cuyo propósito es garantizarle un ingreso al empleado que debe ausentarse del trabajo por circunstancias relacionadas a su salud. En nuestro ordenamiento jurídico la licencia por enfermedad está concebida para que el empleado la utilice cuando sea necesario. La posibilidad de acumularla que dispone la Ley Núm. 180 no es para que

---

vacaciones, licencia por enfermedad o cualquier otro beneficio, más una cantidad igual a la que se le haya dejado de satisfacer, por concepto de compensación adicional, además de los costos, gastos, intereses y honorarios de abogados del procedimiento, sin que para nada de ello obste pacto en contrario.

Nótese cómo el citado inciso distingue entre salario y licencia por enfermedad, refiriéndose por separado a cada uno como conceptos distintos. Asimismo, la acción civil a la que se alude en este inciso para reclamar el pago de la licencia por enfermedad no es de aplicación a este caso —en el cual lo que se reclama es la liquidación del balance acumulado al terminar la relación obrero-patronal- pues como ya dijimos  -y reiteramos a continuación- ni la Ley Núm. 180, ni el Convenio Colectivo 73, ni la Práctica RH-026-A proveen para la liquidación de la licencia por enfermedad en circunstancias como la de autos. Por el contrario, dicha acción de ordinario lo que permite es que si el patrono no paga la licencia por enfermedad utilizada (o paga menos de lo establecido), el empleado pueda reclamar y cobrar la diferencia.

se pague el balance no utilizado, sino para incentivar su uso más efectivo para cuando el empleado la necesite:

> [S]alvo que el decreto [mandatorio] expresamente disponga otra cosa, la licencia por enfermedad es para hacerle frente a las ausencias por motivos de salud, de manera que éstas no afecten el ingreso del empleado. No son por su propia naturaleza para pagarse en efectivo cuando el empleado no se ha ausentado de su trabajo. Opinión 1-91 del Secretario del Trabajo y Recursos Humanos de Puerto Rico de 1 de mayo de 1991.

Segundo, de la propia Ley Núm. 180 y su historial legislativo se desprende que un patrono privado no está obligado a liquidar el balance acumulado de la licencia por enfermedad al terminar la relación obrero-patronal.[28] Como vimos, esa fue la intención del legislador al modificar el texto original del Art. 5(n) de la Ley Núm. 84 y eliminar lo referente a la liquidación de esa licencia. No hay ningún indicio en la Ley Núm. 180 que sugiera algún cambio al respecto con relación a su antecesora. Por el contrario, el Art. 5(n) de la Ley Núm. 84 fue adoptado en su totalidad por el Art. 6(l) de la Ley Núm. 180, reflejando así la intención del legislador de no alterar ese estado de derecho.

Tercero, y por último, el hecho de que la Ley Núm. 180 no provea para la liquidación de la licencia por enfermedad no impide que el patrono se obligue a conceder

---

[28] Valga aclarar que aunque la Ley Núm. 180 no provee para la liquidación de la licencia por enfermedad, ello de ninguna forma incide sobre el derecho del empleado a acumular, utilizar y beneficiarse de esta licencia de conformidad con las disposiciones de la propia Ley.

mayores beneficios a través de la contratación individual o colectiva.[29] Así lo hizo la PRTC al establecer mediante la Práctica RH-026-A una tasa de acumulación de licencia por enfermedad superior a la provista en la Ley Núm. 180 y al disponer para su liquidación cuando el empleado se jubila. Por ser la liquidación de licencia por enfermedad un beneficio no contemplado en la Ley Núm. 180, la PRTC podía, siempre que no contraviniera un acuerdo o disposición anterior, condicionar razonablemente dicho beneficio al cumplimiento de determinado criterio.[30] Por lo tanto, no es nula la disposición denominada "Banco Congelado" incluida en la Práctica RH-026-A.[31]

---

[29] Esto lo reconocen los recurridos, quienes en su alegato expusieron que:

> [L]a realidad es que, en este caso, la PRTC promulgó una política obrero patronal denominada Práctica RH-26-A que reconoce, como parte del contrato individual de trabajo, unos beneficios mayores a los que establece la ley que incluyen el derecho a la acumulación de la licencia de enfermedad no utilizada en tres distintas partidas ('Reserva', 'Balance Acumulado' y 'Banco Congelado') y el derecho a su liquidación condicionada una vez culmina la relación obrero patronal. Alegato, pág. 10.

[30] Recordemos que el Decreto Mandatorio 73 tampoco proveía para la liquidación de la licencia por enfermedad acumulada.

[31] Condicionar la liquidación de la licencia por enfermedad no es una práctica extraña en nuestro ordenamiento jurídico. Por ejemplo, la Ley Núm. 125-1967, 3 LPRA sec. 703 et seq., aplicable a los empleados públicos, también condiciona la liquidación de la licencia por enfermedad a la jubilación del empleado o a que al momento de la separación haya trabajado por lo menos diez años en el servicio público. A propósito de esto último, los foros inferiores, en apoyo de sus determinaciones, citaron dos casos de este Tribunal en los que interpretamos la Ley Núm. 125. En Caballero v. Sistema de Retiro, 129 DPR 146 (1991), un empleado público renunció a su empleo para acogerse a una pensión diferida. El Sistema de Retiro le negó el pago de la licencia por enfermedad acumulada hasta tanto cumpliera la edad requerida por ley para la jubilación. Evaluadas las circunstancias específicas, concluimos que acogerse a una pensión diferida estaba dentro del término "para acogerse a la jubilación" dispuesto en el Art. 2 de la Ley Núm. 125 y por consiguiente el empleado era acreedor del pago global del balance de la licencia por enfermedad. Por su parte, en Sunc. Álvarez Crespo v. Pierluisi, 150 DPR 252 (2000), se trató de un empleado público que falleció y sus herederos reclamaron la liquidación de la licencia por enfermedad. Concluimos que al

En el presente caso no existe controversia en cuanto a que los recurridos fueron destituidos de la PRTC. Así, en vista de que no cumplen con la condición establecida en la Práctica RH-026-A, y que la Ley Núm. 180 no le requiere al patrono pagar el balance de días acumulados al concluir la relación obrero-patronal, no procede el reclamo de los recurridos sobre la liquidación del balance acumulado en la licencia por enfermedad. En consecuencia, se declara con lugar la moción de sentencia sumaria parcial promovida por la PRTC.

### IV

Por los fundamentos que anteceden, se revoca la sentencia del Tribunal de Apelaciones, se desestima la causa de acción al amparo de la Ley Núm. 180 y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos conforme con lo aquí resuelto.

Se dictará Sentencia de conformidad.


                                   Maite D. Oronoz Rodríguez
                                   Jueza Presidenta

---

tratarse del fallecimiento de un empleado que le dedicó más de diez años al servicio público, se cumplían los requisitos para la liquidación de la licencia por enfermedad, acreencia que era transmisible a sus herederos. Como se ve, los hechos de estos casos son claramente distinguibles de los que tenemos ante nos y la legislación aplicable también era otra.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Noel Zayas Rodríguez y otros

    Recurridos

           v.                    CC-2014-127

Puerto Rico Telephone Co.

    Peticionaria


SENTENCIA


En San Juan, Puerto Rico, a 10 de junio de 2016.


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la sentencia del Tribunal de Apelaciones, se desestima la causa de acción al amparo de la Ley Núm. 180 y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos conforme con lo aquí resuelto.

Así lo pronunció y manda el Tribunal y lo certifica el Secretario del Tribunal Supremo.


Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo